UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re

TRONOX INCORPORATED, et al.,

                              Debtors.
-----------------------------------------------------------------x

TRONOX INCORPORATED, et al.,

                              Plaintiffs,

                 - against -

KERR MCGEE CORPORATION, et al.,

                             Defendants.
-----------------------------------------------------------------x

THE UNITED STATES OF AMERICA,

                       Plaintiff-Intervenor,
            - against –

TRONOX, INC., et al.

                             Defendants.
-----------------------------------------------------------------x

Chapter 11

Case No. 09-10156 (ALG)
(Confirmed Cases)

Adv. Proc. No. 09-1198 (ALG)

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON JOINT MOTION
FOR A REPORT AND RECOMMENDATION TO THE DISTRICT COURT
RECOMMENDING APPROVAL OF SETTLEMENT AGREEMENT
RESOLVING THE ADVERSARY PROCEEDING AND ISSUANCE OF
AN INJUNCTION IN SUPPORT THEREOF**

*Introduction*

      On April 9, 2014, Plaintiff Anadarko Litigation Trust (the "Litigation Trust"), as

successor to Debtors Tronox Incorporated, Tronox Worldwide LLC, and Tronox LLC[1] as

---

[1] Pursuant to the Anadarko Litigation Trust Agreement, which was approved by the Bankruptcy Court on
February 14, 2011 [Bankr. Dkt. No. 2812], the Anadarko Litigation Trust was appointed as the representative of

plaintiffs in the above-captioned Adversary Proceeding, and the Defendants named in the

Adversary Proceeding[2] filed a motion (the "9019 Recommendation Motion") seeking a report

and recommendation, pursuant to Bankruptcy Code § 105(a), 28 U.S.C. §§ 1367 and 1651, and

Rules 2002, 7001, 7065 and 9019 of the Federal Rules of Bankruptcy Procedure, recommending

that the United States District Court for the Southern District of New York enter an order

(I) approving the Settlement Agreement, dated April 3, 2014 (as corrected on April 9, 2014

[Adv. Dkt. No. 637][3], the "Settlement Agreement"), by and among (1) the Litigation Trust, (2)

the United States, and (3) Anadarko; and (II) permanently enjoining certain parties from

asserting, against any Anadarko Released Party, any Trust Derivative Claim or any claims that

are duplicative of Trust Derivative Claims (the "Injunction").

The United States of America (the "United States" or the "Government")[4] filed a

pleading joining in the 9019 Recommendation Motion and requesting that the Court recommend

that the District Court also approve the Settlement Agreement as fair, reasonable, and consistent

with environmental law.  On May 22, 2014, the Garretson Resolution Group, Inc. ("GRG"), in

its capacity as the Tort Claims Trustee of the Tronox Incorporated Tort Claims Trust (the "Tort

---

each of the Plaintiff Debtors' estates, as that term is used in 11 U.S.C. § 1123(b)(3)(B), with the power and right to prosecute this matter. By the same agreement and Order, the Anadarko Litigation Trust was "deemed substituted" for the Debtor Plaintiffs in the Adversary Proceeding "as the party in such litigation."

[2] Defendants are Anadarko Petroleum Corporation and its subsidiaries, Kerr-McGee Corporation, Anadarko US Offshore Corporation (f/k/a Kerr-McGee Oil & Gas Corporation), Kerr-McGee Worldwide Corporation, KM Investment Corporation (incorrectly sued as Kerr-McGee Investment Corporation), Kerr-McGee Credit LLC, Kerr-McGee Shared Services Corporation, and Kerr-McGee Stored Power Company LLC (collectively, "Anadarko").

[3] Hereinafter, references to entries on the docket of the adversary proceeding (09-1198) will be "Adv. Dkt. No. ___" and references to entries in the main bankruptcy case (09-10156) will be "Bankr. Dkt. No. ___".

[4] The United States is acting on behalf of the United States Environmental Protection Agency ("EPA"); the United States Department of Agriculture, acting through the United States Forest Service; the United States Department of Commerce, acting through the National Oceanic and Atmospheric Administration; the United States Department of the Interior, acting through the Fish and Wildlife Service and the Bureau of Land Management; the United States Department of Defense ("DOD"), including the United States Department of the Army, United States Army Corps of Engineers, United States Department of the Navy, and United States Department of the Air Force; and the United States Nuclear Regulatory Commission.

Claims Trust"), one of the constituent trusts that comprise the Plaintiff Litigation Trust, submitted a memorandum in support of the 9019 Recommendation Motion.

The Settlement Agreement was reached almost four months after the Court issued its December 12, 2013 Memorandum of Opinion, After Trial (the "Decision"), 503 B.R. 239 (Bankr. S.D.N.Y. 2013), in which it found the Kerr-McGee Defendants liable under the Second Amended Adversary Complaint for actual and constructive fraudulent conveyances in connection with a spin-off of Kerr-McGee from Tronox. *See* Adv. Dkt. No. 622.[5]  The Decision was issued after a hotly contested trial held over 34 days during an almost five-month period at which 28 witnesses testified, 14 of whom were qualified as experts, and over 6,100 exhibits and thousands of pages of the deposition testimony of 40 witnesses were also admitted into evidence. The Decision is not a final judgment, however, as the Defendants had reserved the right to file a claim under § 502(h) of the Bankruptcy Code if they were found liable, and in the Decision, the Court provided an opportunity for them to do so and invited further briefing on issues respecting the amount of damages.  The Decision set forth a tentative, non-final range of possible damages, and in their submissions, the parties argued that the actual amount of damages should be higher or lower than the Court's range by billions of dollars.  Defendants argued that damages were no more than $850 million, accepting *arguendo* the premise of the Court's decision that they were liable – which they did not concede.  The Litigation Trust argued it was entitled to more than $20

---

[5] The Court dismissed a claim for breach of fiduciary duties; several other claims had been dismissed or limited in earlier decisions on motions.  *See Tronox Inc., et. al. v. Anadarko Petroleum Corp. and Kerr–McGee Corp. (In re Tronox Inc.)*, 429 B.R. 73 (Bankr. S.D.N.Y. 2010); *Tronox Inc., et. al. v. Anadarko Petroleum Corp. and Kerr–McGee Corp. (In re Tronox Inc.)*, 450 B.R. 432 (Bankr. S.D.N.Y. 2011); and *Tronox Inc., et. al. v. Anadarko Petroleum Corp. and Kerr–McGee Corp. (In re Tronox Inc.)*, 464 B.R. 606 (Bankr. S.D.N.Y. 2012).  In addition, in an oral decision read into the record on May 8, 2012, the Court dismissed Anadarko as a separate defendant; however, a final order was not entered to that effect.  Anadarko had acquired the Kerr-McGee entities after the Kerr-McGee/Tronox spin-off was completed, and the Court held that it was entitled to summary judgment dismissing the claim that it was liable as a subsequent transferee of an alleged fraudulent conveyance.

billion under principles of fraudulent conveyance law.  *See* Adv. Dkt. No. 623 at 20; Adv. Dkt. No. 624 at 1.  22.[6]

Shortly before the hearing on the issue of damages, the parties informed the Court that they had reached an overall settlement of the adversary proceeding.[7]  In the Settlement, the Parties agreed to settle, compromise and resolve their disputes related to the Adversary Proceeding, including the Trust Derivative Claims, and to address other matters, as and to the extent provided in the Settlement Agreement.  The Settlement Agreement represents a compromise and settlement of disputed claims, asserted and unasserted.  In the absence of the Settlement, the matter would proceed to final decision on the issue of damages, and Anadarko would doubtless seek further review and appeal.  The Settlement Agreement will, to the extent provided in the Settlement Agreement, settle, compromise, resolve and close the Adversary Proceeding and settle, compromise, resolve, and extinguish the Trust Derivative Claims, any claims that were asserted or that could have been asserted in the Second Amended Adversary Complaint, the claims asserted in the Complaint-in-Intervention, and the claims that could have been asserted in the Complaint-in-Intervention relating to the subject matter of the Adversary Proceeding, together and on a global basis.

---

[6] On January 13, 2014, Kerr-McGee Corporation, pursuant to the Decision, filed a claim under § 502(h) of the Bankruptcy Code on behalf of itself and the other Anadarko Trial Defendants.  See Adv. Dkt. No. 623.  The Litigation Trust filed objections to this 502(h) claim on February 12, 2014.  See Adv. Dkt. No. 624.  Anadarko had previously filed Proofs of Claim against the Debtors, on its behalf and on behalf of its Kerr-McGee subsidiaries, on August 11, 2009, which it subsequently amended on September 11, 2009 and September 11, 2010.

[7] The Litigation Trust, Defendants and the United States, all of whom are represented by experienced counsel and have engaged expert technical consultants, had previously attempted to settle this adversary proceeding.  In December 2011, as reflected by an agreed order in the Court's docket, the parties agreed to attend a mediation regarding potential settlement in this case. [Dkt. Entry 294].  As noted in a July 12, 2012 docket entry, the parties engaged in additional settlement discussions during trial. [Dkt. Entry 451].

# FINDINGS OF FACT

The Court makes the following findings of fact relating to the Settlement and the events leading up to the Settlement.

*The Chapter 11 Cases and the Litigation*

1.      On January 12, 2009, Tronox Incorporated, Tronox LLC, Tronox Worldwide LLC and several affiliates commenced cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

2.      On November 30, 2010, the Bankruptcy Court confirmed the Debtors' First Amended Joint Plan of Reorganization (the "Plan"). On February 14, 2011, the Plan became effective.

3.      In the Chapter 11 Cases, the United States, other governmental entities, and other Persons filed Proofs of Claim against the Debtors on account of, among other things, alleged environmental claims, obligations, and/or liabilities at certain of the Covered Sites (as to such Proofs of Claims filed by the United States and other governmental entities, the "Bankruptcy Environmental Claims," and as to such Proofs of Claim filed by other Persons, the "Bankruptcy Indirect Environmental Claims").

4.      Various tort claimants filed Proofs of Claim against the Debtors on account of alleged tort liabilities, including for personal injury and property damage (the "Bankruptcy Tort Claims" and, together with the Bankruptcy Environmental Claims and the Bankruptcy Indirect Environmental Claims, the "Bankruptcy Claims").  The Bankruptcy Claims were (or will be) resolved or addressed pursuant to the Plan and related agreements, including the Environmental

Settlement Agreement, the Cimarron Environmental Response Trust Agreement, the Multistate Environmental Response Trust Agreement, the Nevada Environmental Response Trust Agreement, the Savannah Environmental Response Trust Agreement, the West Chicago Environmental Response Trust Agreement, and the Tort Claims Trust Agreement (collectively, but excluding the Plan and the Environmental Settlement Agreement, the "Environmental and Tort Trust Agreements"), and the Litigation Trust Agreement, and other prior proceedings of the Bankruptcy Court.

5.      There are two complaints against Anadarko currently being jointly litigated in the Adversary Proceeding:

      a.      the Second Amended Adversary Complaint, originally commenced during the Chapter 11 Cases by certain of the Debtors but assigned and transferred to, and currently prosecuted by, the Litigation Trust for the benefit of its beneficiaries (including the United States) pursuant to the Plan, the Litigation Trust Agreement, and the Environmental Settlement Agreement, and which, at the time of trial, asserted claims including: actual fraudulent transfer under Bankruptcy Code §§ 544(b) and 550(a); constructive fraudulent transfer under Bankruptcy Code §§ 544(b) and 550(a); constructive fraudulent transfer under Bankruptcy Code §§ 548 and 550(a); breach of fiduciary duty; equitable subordination; and equitable disallowance; and which originally asserted claims for civil conspiracy, aiding and abetting fraudulent conveyance, unjust enrichment, disallowance of claims pursuant to § 502(d) of the Bankruptcy Code, and disallowance of contingent indemnity claims pursuant to § 502(e)(1)(B) of the Bankruptcy Code; and

      b.      the Complaint-in-Intervention filed by the United States, asserting claims under the Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3301–3308 (the "FDCPA").

6.      The Plan, Litigation Trust Agreement and Environmental Settlement Agreement assigned, as provided in the Confirmation Order (including, but not limited to, ¶¶ 126, 127 and 131) and the Litigation Trust Agreement (including, but not limited to §§ 2(a)(iii), 2(a)(viii), 2(b) and 4(b)(iv)), all of the Debtors' respective rights and interests in the Adversary Proceeding (but

excluding the Complaint-in-Intervention) and any claim or cause of action of the Debtors related thereto, whether or not asserted in the Adversary Proceeding, to the Litigation Trust for the benefit of the entities listed in Section 1(d) of the Litigation Trust Agreement, which include the Tort Claims Trust and various Environmental Trusts.

7.     The Litigation Trust succeeded to, as of and after the Plan Effective Date, any and all claims against the Anadarko Released Parties[8] related to the claims, issues and subject matter of the Adversary Proceeding which were held, owned and/or controlled by one or more Debtors before the Plan Effective Date.  Since the Plan Effective Date, the Litigation Trust has not sold, assigned, transferred, encumbered, hypothecated, abandoned, conveyed or otherwise disposed of any claims received by the Litigation Trust from the Debtors pursuant to the Plan.

8.     Pursuant to the Plan, Litigation Trust Agreement, Environmental Settlement Agreement, and Environmental and Tort Trust Agreements (other than the West Chicago Environmental Response Trust Agreement), the Litigation Trust Beneficiaries and beneficiaries of the Environmental and Tort Trusts (together with the Litigation Trust Beneficiaries, the "Beneficiaries" and each individually a "Beneficiary") are entitled to be paid, on account of their Bankruptcy Environmental Claims and Bankruptcy Tort Claims, specified allocations (the "Distribution Scheme") of a share of the net proceeds of any recovery from the Adversary Proceeding, the principal allocation of which involves payment of approximately 88% of the net proceeds of any recovery on account of Bankruptcy Environmental Claims and payment of approximately 12% of the net proceeds of any recovery on account of Bankruptcy Tort Claims,

---

[8] As set forth in Section 1.9 of the Settlement Agreement, "*Anadarko Released Parties*" shall mean Anadarko Petroleum Corporation, Kerr-McGee Corporation, Anadarko US Offshore Corporation (f/k/a Kerr-McGee Oil & Gas Corporation), Kerr-McGee Worldwide Corporation, KM Investment Corporation, Kerr-McGee Shared Services Company LLC, and Kerr-McGee Credit LLC, and Kerr-McGee Stored Power Company LLC, each of their Affiliates, and each of their respective predecessors, successors, and assigns, all of their past, present and future officers, directors, employees, managers, members, agents, attorneys and other representatives.

with subsidiary allocations on account of the Bankruptcy Environmental Claims and Bankruptcy Tort Claims governed by the Environmental Settlement Agreement, Litigation Trust Agreement, and the Environmental and Tort Trust Agreements (other than the West Chicago Environmental Response Trust Agreement).  Further, the Litigation Trust Agreement provides that the proceeds of any settlement or other resolution of the Complaint-in-Intervention would be treated as if they were funds obtained in the Second Amended Adversary Complaint by the Litigation Trust.

9.     As part of the Plan confirmation process, this Court approved the approximately 88% environmental / 12% tort allocation of the Anadarko Litigation net proceeds under the Plan, finding that the creation and funding of the Environmental Response Trusts, Tort Claims Trust and Anadarko Litigation Trust was, among other things, fair and equitable and in the best interests of Tronox, the Estates and all holders of Claims and Equity Interests.  *See* Bankr. Dkt. No. 2567 ("Confirmation Order") ¶¶ 35–38.

10.     This Court also approved the approximately 88% environmental / 12% tort allocation in the Environmental Settlement Agreement, the Tort Claims Trust Agreement and the Litigation Trust Agreement, and on January 26, 2011, issued an order finding that the Environmental Settlement Agreement was fair, reasonable, and consistent with environmental law.  *See* Bankr. Dkt. No. 2747 ¶ 1.

*The Settlement*

11.     The Settlement Agreement, which is attached in its entirety as Exhibit "A" hereto, includes the following key provisions.[9]

---

[9] To the extent there is any conflict between the terms of the Settlement Agreement and the summary of its terms in this Report and Recommendation, the Settlement Agreement controls.

a.     The Effective Date of the Settlement Agreement shall not occur until after the following have occurred:

     i.     the Bankruptcy Court issues this Report and Recommendation recommending the approval of the Settlement Agreement and the issuance of an injunction enjoining certain persons from asserting Trust Derivative Claims and claims that are duplicative of Trust Derivative Claims;

     ii.    the District Court issues an order, substantively identical to the order attached to the Settlement Agreement, approving this Report and Recommendation and enjoining the Trust Derivative Claims and claims that are duplicative of Trust Derivative Claims; and

     iii.   the District Court's Approval Order becomes Final.  The Effective Date of the Settlement Agreement is the date on which such Approval Order becomes Final.

b.     No later than two (2) Business Days after the Effective Date (the "Payment Date"), Anadarko shall cause Five Billion One Hundred Fifty Million Dollars ($5,150,000,000.00) in cash plus interest thereon from the Lodging Date as provided in Sections 3.1 and 3.3 of the Settlement Agreement (collectively, the "Settlement Proceeds") to be timely paid to the Litigation Trust by wire transfer(s) of immediately available funds.  The Litigation Trust has the sole responsibility and obligation to cause the Settlement Proceeds to be allocated and distributed to the Litigation Trust Beneficiaries as prescribed by the Litigation Trust Agreement.

c.     Within five (5) Business Days following receipt of the Settlement Proceeds, the Litigation Trustee and the United States shall commence taking all steps necessary to cause the Adversary Proceeding to be dismissed with prejudice, including by seeking entry of an order dismissing the Adversary Proceeding with prejudice substantially in the form attached as *Exhibit C* to the 9019 Motion.

d.     As set forth more completely in Section 4.1.1 of the Settlement Agreement, upon the payment of the Settlement Proceeds, the Litigation Trust fully, finally, and forever irrevocably releases any Anadarko Released Party from and against any and all claims that are held and/or controlled by the Litigation Trust and then existing or thereafter arising out of, accruing from or relating to (i) the Chapter 11 Cases (including the Bankruptcy Claims), (ii) the Adversary Proceeding, (iii) the Covered Sites, or (iv) the Trust Derivative Claims.

e.     As set forth more completely in Section 4.1.2.1 of the Settlement Agreement, upon the payment of the Settlement Proceeds, Anadarko fully, finally, and forever irrevocably releases the Litigation Trustee, the Litigation Trust, and each of its past, present and future employees, agents, managers, attorneys and other representatives, including but not limited to the current and future Litigation Trustee and current and future members of the Trust Advisory Board, from and against any and all

claims then existing or thereafter arising out of, accruing from or relating to (i) the Chapter 11 Cases (including the Bankruptcy Claims), (ii) the Adversary Proceeding, (iii) the Covered Sites, or (iv) the Trust Derivative Claims or claims, if any, which are duplicative of Trust Derivative Claims, whether or not held or controlled by the Litigation Trust, or whether or not the Litigation Trust could have asserted such claims against any Anadarko Released Party.

      f.     As set forth more completely in Sections 4.2.1.1 through 4.2.1.7 of the Settlement Agreement, upon the payment of the Settlement Proceeds, the United States covenants not to sue the Anadarko Covenant Parties or, in the case of 4.2.1.6, Anadarko for certain common law claims that are Trust Derivative Claims and certain statutory claims with respect to Covered Sites.

      g.     As set forth more completely in Section 4.3.1 of the Settlement Agreement, upon the payment of the Settlement Proceeds, Anadarko covenants not to sue the United States, any Beneficiary, or the Environmental and Tort Trusts for any offset or reduction of the recovery in the Adversary Proceeding, including but not limited to any claim pursuant to Bankruptcy Code § 502(h), and covenants not to sue and waives any claim for reimbursement of the Settlement Proceeds against the United States, any Beneficiary, or the Environmental and Tort Trusts.

      h.     As set forth more completely in Section 4.3.2 of the Settlement Agreement, upon the payment of the Settlement Proceeds, Anadarko covenants not to sue or assert any civil claims or causes of action against the United States, any Beneficiary, or the Environmental and Tort Trusts with respect to the Covered Sites.

      i.     As set forth more completely in Section 4.4 of the Settlement Agreement, the Parties agree that, upon the Approval Order becoming Final, the Settlement Agreement will constitute a judicially approved settlement for purposes of Section 113(f)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675, and that Anadarko is entitled, upon payment of the Settlement Proceeds, to protection from contribution actions or claims as provided by Section 113(f)(2), of CERCLA, 42 U.S.C. §§ 9613(f)(2), or as otherwise provided by law for matters addressed in the Settlement Agreement.

      j.     As set forth more completely in Section 4.5 of the Settlement Agreement, to the extent that any of the Debtors or the Debtors' estates transferred any contribution rights to the Litigation Trust pursuant to the Plan and the Environmental and Tort Trust Agreements, the Litigation Trust shall not pursue such contribution rights against third parties where such third party could reasonably be expected to assert a claim against the Anadarko Covenant Parties or Anadarko Released Parties in connection therewith; provided, however, that if the Litigation Trust does pursue any such claim against a third party, and such third party asserts a claim against an Anadarko Covenant Party or Anadarko Released Party, the Litigation Trust shall immediately transfer and assign such contribution rights to the Anadarko Party against whom the claim is being asserted.

k.      Subject to certain limitations set forth in Section 6.2 of the Settlement Agreement, the Litigation Trust agrees to cooperate with and support Anadarko's efforts to enforce the Approval Order.

l.      The Bankruptcy Court and District Court shall retain jurisdiction to resolve (or recommend resolution to the extent that the Bankruptcy Court does not have final order authority) disputes in connection with, and to enforce, the Settlement Agreement.

m.      In the event that an order denying the 9019 Motion or the relief requested in the United States Joinder becomes Final, the Settlement Agreement shall terminate and be null and void (except that Sections 8 and 9 of the Settlement Agreement shall survive termination), and each of the parties' respective interests, rights, remedies and defenses shall be fully restored without prejudice.

n.      An integral provision of the Settlement Agreement is that this Report and Recommendation recommend the issuance of—and that the District Court issue—a permanent injunction as follows:

> Pursuant to 28 U.S.C. §§ 1367 & 1651, § 105(a) of the Bankruptcy Code and Bankruptcy Rules 7001 and 7065, (i) any Debtor(s), (ii) any creditor of any Debtor who filed or could have filed a claim in the Chapter 11 Cases, (iii) any other Person whose claim (A) in any way arises from or is related to the Adversary Proceeding, (B) is a Trust Derivative Claim, or (C) is duplicative of a Trust Derivative Claim, and (iv) any Person acting or purporting to act as an attorney for any of the preceding is hereby permanently enjoined from asserting against any Anadarko Released Party (I) any Trust Derivative Claims or (II) any claims that are duplicative of Trust Derivative Claims, whether or not held or controlled by the Litigation Trust, or whether or not the Litigation Trust could have asserted such claims against any Anadarko Released Party.  The injunction herein shall not apply to or bar the following: (i) any criminal liability; (ii) any liability arising under Title 26 of the United States Code (Internal Revenue Code) or state tax laws; (iii) any liability arising under federal or state securities laws; (iv) any action to enforce a covenant not to sue, release, or agreement not to seek reimbursement contained in the Settlement Agreement; (v) any liability that an Anadarko Released Party might have that does not arise from or through a liability of a Debtor; (vi) any liability of an Anadarko Released Party due to its status or acts or omissions since November 28, 2005 as a/an (A) owner, (B) operator, (C) discharger, (D) lessee, (E) permittee, (F) licensee, (G) person in charge, (H) holder of a right of use and easement, (I) arranger for disposal or treatment, (J) transporter, or (K) person who generates, handles, transports, treats, stores or disposes of solid or hazardous waste; (vii) any liability relating to the E&P Business or the stored power or battery business (including, but not limited to, as owned or operated by U.S. Avestor LLC and Kerr-McGee

11

Stored Power Company LLC[10]); and (viii) any liability that any Anadarko Released Party retained, received or assumed pursuant to the Assignment Agreement or Assignment, Assumption, and Indemnity Agreement. For the avoidance of doubt, to the extent that a liability of an Anadarko Released Party excluded from the injunction herein by the preceding sentence would be a liability for which such Anadarko Released Party would be jointly and severally liable with others, including but not limited to one or more Debtors or Reorganized Debtors, under applicable law, nothing in this injunction is intended to alter any such applicable principles of joint and several liability where otherwise provided by law. The injunction herein does not apply to the Litigation Trust and the United States, which are providing releases and covenants not to sue in the Settlement Agreement.

12. Although the actual amount to be paid out of the Settlement Fund will depend on the amount of trust expenses and other factors, the Government estimates that, under the instant settlement, approximately $4.4 billion will be paid for environmental claims and liabilities and approximately $600 million would be paid to the Tort Claims Trust for tort claims.

*Notice of the Settlement*

13. On April 12, 2014, Kurtzman Carson Consultants, LLC ("KCC"), the claims and noticing agent in the Debtors' chapter 11 cases, completed service of more than 66,000 copies of the 9019 Recommendation Motion and Settlement to potentially interested parties. *See* Aff. of Service of Clarissa D. Cu [Adv. Dkt. No. 640] ("Cu Decl."); Decl. re Establishment of Dedicated Website and Other Activity [Adv. Dkt. No. 653] ("Website Decl.") ¶ 6. KCC sent copies of the Settlement Agreement and 9019 Recommendation Motion to all persons and entities on Tronox's Creditor Matrix and Core Rule 2002 service list; all state attorneys general in the continental United States; the registered holders of Tronox's pre-bankruptcy Class A and B common stock; nominees for distribution to the beneficial holders of Tronox's pre-bankruptcy Class A and B

---

[10] Provided, however, that as it relates to Kerr-McGee Stored Power Company LLC, subpart (vii) is applicable only to the extent that such liability, if any, relates to or arises from the stored power or battery business.

common stock and 9 1/2% senior unsecured notes; and other potentially interested parties. Cu Decl. ¶¶ 1, 3, 5-7.  Service was completed well in advance of the hearing, allowing potential objectors significantly more response time than required by the Bankruptcy Rules. Fed.  R. Bankr. P. 2002(a)(3).

14.     In addition, the settling parties undertook an extensive publication notice campaign.  Notices were published over the course of 14 days in 86 newspapers across the country. This included all 40 newspapers in which Tronox had published its bar date and confirmation notices plus additional papers that the parties thought might reach additional potentially interested parties. Compare Aff. of Publication of Notice of Bar Date [Bankr. Dkt. No. 1465] at 1-3; Aff. of Publication re Confirmation H'rg [Bankr. Dkt. No. 2324] at 1 with Decl. of Publication of Notice of Settlement Agreement and 9019 Motion [Adv. Dkt. No. 651] ("FTI Decl.") at 2-9. These included papers designed to provide notice to readers throughout Mississippi, including the Commercial Dispatch in Columbus, MS, the Monroe Journal in Monroe, MS, the Clarion Ledger in Jackson, MS, the Hattiesburg American in Hattiesburg, MS, the Meridian Star in Meridian, MS, and the Birmingham News in Birmingham, AL. Moreover, notices were published in national newspapers, including The Wall Street Journal, The New York Times and USA Today. *Id*.

15.     By April 11, 2014, the settling parties also created a website that included additional information regarding the Settlement: www.kccllc.net/TronoxKerrMcGeeSettlement. See Website Decl. ¶ 4. The website includes potentially relevant information regarding the Settlement, including copies of the Settlement Agreement, 9019 Recommendation Motion, the text of the Injunction, the documents that define the environmental sites covered by the Settlement Agreement, Tronox's claims register, and key pleadings and agreements from

13

Tronox's chapter 11 cases and the Adversary Proceeding. Id. Visitors to the website also can register for electronic noticing. *Id*. As of May 19, 2014, the website had received a total of 564 hits and 338 unique visits. Id. ¶ 5.

*Objections Filed in this Court*

16.     Five objections to the 9019 Recommendation Motion were filed on the docket. Two were filed by lawyers on behalf of tort claimants in Columbus, Mississippi, where Kerr-McGee Chemical LLC owned and operated a wood treating plant from 1964 to 2003.  The plant discharged the chemical creosote, claimed to be a carcinogen.

> A.  Objection to Settlement filed by Creditor Maranatha Faith Center, Inc. [Bankr. Dkt. No. 2991; Adv. Dkt. No. 643] (the "Maranatha Objection").  Maranatha is a church located near a former Kerr-McGee wood treating plant in Columbus, MS since 1988.  *Id*. ¶ 2.  It filed a property damage claim for $100 million in the Tronox chapter 11 cases for damages allegedly resulting from future costs to remediate its five-acre property; $29,700 in lost rental income each year since 2000; unquantified costs from the  destruction and rebuilding of its sanctuary; and unspecified lost income from "lack of congregational growth" due to the contamination.  *Id*. ¶ 3. Maranatha contends that the Settlement is "not fair, adequate or reasonable" because it will not fully satisfy Maranatha's $100 million claim, and that the Settlement amount is at "the lowest end of the settlement range recommended by the Court when Anadarko has more than ample reserves on hand or coming" to pay more.  *Id*. ¶¶ 3, 6. Maranatha also objects to the Injunction because "[t]o preclude an unknown class of claimants from pursuit of known or unknown claims against Kerr-McGee or Anadarko is not fair, reasonable or in the best interests of the claimants."  *Id*. ¶ 11. Maranatha asks that the Court deny the 9019 Recommendation Motion (including the requested Injunction) and require the parties to engage in further negotiations or, alternatively, that the United States agree to take "substantially less" than 88% of the Settlement proceeds. *Id*.  The Maranatha Objection is overruled for the reasons stated in the Conclusions of Law hereafter.
>
> B.  Objection filed on May 15, 2014 by Columbus, Mississippi attorney Wilbur O. Colom [Adv. Dkt. No. 646] ("Colom Objection").  The Colom Objection was filed on behalf of alleged "potential claimants" challenging the sufficiency of the notice regarding the 9019 Recommendation Motion and Settlement. *See generally* Adv. Dkt. No. 646 (the "Colom Objection"). Colom

asks the Court to require Plaintiff and Anadarko to provide individual mailed notice to "all potential claimants" or to extend the notice deadline by 90 days for individuals for whom he received notice of the Settlement to allow additional time to reach them. *Id*. at 4.  The Colom Objection also challenges the scope of the Injunction because it covers "persons whose claim have not yet occurred, e.g. injury not apparent or not yet found to be contaminated are covered." *Id*. at 3.  The Colum Objection is also overruled for the reasons stated in the Conclusions of Law hereafter.

17.    In addition, a letter dated May 15, 2014 was filed by Anita Gregory on behalf of herself and certain Columbus, Mississippi Creosote Claimants [Bankr. Dkt. No. 2995; Adv. Dkt. No. 648 and 650].  This objection asks the Court to reject the Settlement because, inter alia, the Columbus, Mississippi Creosote Claimants were not adequately represented by their own Mississippi counsel in Tronox's chapter 11 cases in that their counsel allegedly submitted an "undervalued" proof of claim in 2009 for $12.5 million and should not be entitled to a contingency fee of up to 50% of the claimants' recovery.  The letter requests that the Court not "finalize [the] settlement based on the amount" of $12,500,000 in the proof of claim and appoint someone other than their Mississippi counsel to disburse settlement funds.  *Id*. at 10.  This objection does not set forth any reason to reject the Settlement, and the complaints in the letter are not matters that this Court can redress in connection with this Motion.

18.    There were two remaining objections that can be dealt with summarily.  Certain affiliates of American International Group objected to the Settlement to "preserv[e]" any rights they have under certain insurance policies that were transferred to certain beneficiaries of the Anadarko Litigation Trust in connection with the Plan.  *See* Bankr. Dkt. No. 2993 (the "AIG Objection") ¶¶ 20–22.  This objection was withdrawn subject to the inclusion of ¶ 28 of the Conclusions of Law below.  Finally, a letter filed May 15, 2014 by Thomas Earl Wright of

Camas Washington [Bankr. Dkt. No. 2994; Adv. Dkt. No. 647] purports to provide a "forest fire report" and does not challenge the Settlement or 9019 Recommendation Motion.  *Id.*

*Government Publication*

19.     On April 14, 2014, the Government published notice of the Settlement Agreement in the Federal Register, formally commencing a period of public comment to run through May 14, 2014, and providing addresses for submission of any comments by mail or email. *See* 79 Fed. Reg. 20,910, at 20,910-20,911 (Apr. 14, 2014).  Residents of Columbus, Mississippi requested additional time to submit public comments, and the United States extended the deadline for submission of comments relating to the Columbus site to May 21, 2014.  *See* 79 Fed. Reg. 27,638, at 27,638-27,639 (May 14, 2014).

20.     The United States received 326 written comments to the Settlement Agreement during the public comment period, nearly all of which (317) are form letters. [11] Of the 326 written comments, 322 were provided by individuals interested in the Columbus, Mississippi site, and four were provided by other individuals or corporations.   On May 5, 2014, the Government held a public meeting in Columbus, Mississippi, pursuant to § 7003(d) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 et seq., to discuss the Settlement Agreement and the Columbus site.   This meeting was held at the request of the Reverend Steve Jamison of the Maranatha Faith Center pursuant to § 7003(d) of RCRA, which provides that the public may request "a public meeting in the affected area" in cases where the Government proposes to provide a covenant not to sue under § 7003, as it does here. See RCRA § 7003(d), 42 U.S.C. § 6973(d).   Counsel for the United States and representatives of the

---

[11] The Government stated that an additional similar 32 comments were submitted after the comment period.

Environmental Protection Agency and the Multistate Environmental Response Trust ("Multistate Trust") created at the time of the Plan of Reorganization participated in this public meeting, which was transcribed.  The United States has reviewed and considered the transcript from that meeting as well as information received from individuals that attended the meeting as public comments.[12]  In addition, two comments were submitted by certain entities relating to a site in Chicago, Illinois. The comments do not identify any concerns about the Settlement Agreement but instead ask EPA to interpret one or more provisions of the 2010 Environmental Settlement Agreement to allow or require EPA to use certain settlement proceeds to reimburse the commenters for clean-up costs.

21.    Notwithstanding the comments received, the United States supports the Settlement and asks the Court to enter this Report and Recommendation.

*Hearing on Approval of Settlement*

22.    On May 28, 2014, this Court held a hearing to consider the 9019 Recommendation Motion, the Objections and the United States Joinder.  The declarations of Litigation Trustee John C. Hueston [Adv. Dkt. No. 638, Ex. D], Clarissa D. Cu of Kurtzman Carson Consultants, LLC [Adv. Dkt. Nos. 653, 640, and Bankr. Dkt. No. 2988 in case. 09-10156)], Joseph L. Bruemmer of Garretson Resolution Group [Adv. Dkt. No. 652, Ex. A], and Christopher D. Tucker of FTI Consulting, Inc. [Adv. Dkt. No. 651] were moved into evidence without objection.  The Court expressly took judicial notice of the following:

- Order, signed 1/13/2009, Establishing Certain Notice, Case Management and Administrative Procedures [Bankr. Dkt. No. 47]

---

[12] The Government determined to treat the comments of members of the public reflected in this transcript as comments submitted during the public comment process.

- Affidavit of Service re: Publication of Notice of Bar Date [Bankr. Dkt. No. 1465]

- Notice of Filing of Disclosure Statement Regarding the Joint Plan of Reorganization of Tronox, Inc., *et al*. [Bankr. Dkt. No. 1708]

- Affidavit of Service re: Notice of Filing of Disclosure Statement [Bankr. Dkt. No. 1713]

- Objection of Maranatha Faith Center to Disclosure Statement and First Amended Plan of Reorganization [Bankr. Dkt. No. 2050]

- Affidavit of Service re: Solicitation Packages served on or before October 7, 2010 [Bankr. Dkt. No. 2270]

- Amended Affidavit of Service re: Solicitation Packages Served on or before October 7, 2010 [Bankr. Dkt. No. 2310]

- Affidavit of Service concerning Publication regarding Confirmation Hearing [Bankr. Dkt. No. 2324]

- Findings of Fact and Conclusions of Law, signed on 11/30/2010, Confirming First Amended Joint Plan of Reorganization of Tronox Inc., *et al*.  [Bankr. Dkt. No. 2567]

- Notice of Confirmation of the First Amended Joint Plan of Reorganization of Tronox Inc., *et al*. [Bankr. Dkt. No. 2578]

- Affidavit of Service regarding Notice of Confirmation of First Amended Joint Plan of Reorganization of Tronox, Inc. *et al*.  [Bankr. Dkt. No. 2598]

- Affidavit of Service regarding Notice of Confirmation of the First Amended Joint Plan of Reorganization of Tronox, Inc., *et al*. [Bankr. Dkt. No. 2602]

- United States Motion to Approve the Consent Decree and Environmental Settlement Agreement among the Debtors, the Environmental Response Trust Trustees, the United States, and Certain State and Local Environmental Agencies. [Bankr. Dkt. No. 2692]

- Order, signed 1/26/2011, granting the United States Motion to Approve the Consent Decree and Environmental Settlement Agreement. [Bankr. Dkt. No. 2747]

- Notice of Filing of Amended Exhibits to the Plan Supplement for the First Amended Joint Plan of Reorganization of Tronox, Inc. *et al*. [Bankr. Dkt. No. 2768]

- Order, signed on 2/14/2011, approving the Execution Versions of the Environmental Response Trust and Anadarko Litigation Trust Agreements and First Amendment to Consent Decree and Environmental Settlement Agreement. [Bankr. Dkt. No. 2812]

Argument was presented by counsel for the parties to the Settlement and counsel who filed the Objections.

Having considered all of the preceding, as well as having presided over the chapter 11 cases and the Adversary Proceeding, including the trial during 2012, the undersigned hereby recommends that the District Court (1) adopt all of the proposed findings of fact and conclusions of law set above and hereafter; (2) approve the Settlement Agreement; and (3) issue the requested permanent injunction.

## CONCLUSIONS OF LAW

1.      To the extent any of the findings of fact set forth above are deemed to be conclusions of law, they are hereby incorporated in this section.

*Jurisdiction and Venue*

2.      This Court has jurisdiction to consider and recommend to the District Court approval or disapproval of the 9019 Recommendation Motion and the relief sought in the United States Joinder pursuant to Bankruptcy Code § 105(a), 28 U.S.C. §§ 157, 1334, 1367 and 1651, and Bankruptcy Rules 2002, 7001, 7065 and 9019.

3.      The Parties to the Settlement Agreement have agreed that this Court should treat the 9019 Recommendation Motion and the United States Joinder as a related matter for purposes of 28 U.S.C. § 157, and the Court determines that this is a related matter.

4.      This Court can issue a report and recommendation pursuant to the Amended Standing Order of Reference, 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012).

5.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory bases for the relief requested herein are Bankruptcy Code § 105, 28 U.S.C. §§ 1367 and 1651, and Bankruptcy Rules 2002, 7001, 7065 and 9019.

7.      In the Plan and Confirmation Order, this Court expressly retained jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases, including jurisdiction to (i) "adjudicate, decide or resolve any motions, adversary proceedings (including the Anadarko Litigation), contested or litigated matters, Causes of Action and any other matters, and grant or deny any applications involving a Tronox Debtor that may be pending on the Effective Date," and (ii) "hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with the Plan."   Plan [Bankr. Dkt. No. 2567], Article XI; see also Confirmation Order ¶ 159.

8.      The Confirmation Order likewise provides this Court with jurisdiction to "issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan."  Confirmation Order ¶ 159.  The Confirmation Order further contemplates that the parties to the Anadarko Litigation may seek approval of a settlement pursuant to Bankruptcy Rule 9019(a).  *Id.* ¶ 131.  Hence, the Court's jurisdiction extends to the 9019 Recommendation Motion and encompasses the issuance of this Report and Recommendation recommending

approval of the terms of the Settlement Agreement and the issuance of an injunction by the District Court as set forth herein.

9.      On June 13, 2013, this Court issued a Final Decree Pursuant to § 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022 Closing Chapter 11 Cases [Bankr. Dkt. No. 2979], which closed all of the Chapter 11 Cases other than the chapter 11 case filed by the parent Debtor, Tronox Incorporated.  The Final Decree provides that "the Court shall retain jurisdiction over any matter pending in Tronox's chapter 11 cases, including the Anadarko Litigation.  The parties in the Anadarko Litigation may raise any issues related to the Anadarko Litigation in the pending adversary proceeding (Adv. No. 09-01198 (ALG)) and in connection with the case of Tronox Incorporated without the need to reopen any closed cases."

   *Notice*

10.     Proper, timely, adequate and sufficient notice of the 9019 Recommendation Motion and the United States Joinder was provided, and no other or further notice need be given.

11.     The Colom Objection to the sufficiency of notice is overruled.  The individuals that Mr. Colom purports to speak for were not listed in the Debtors' schedules and failed to file proofs of claim and, therefore, are not creditors of the estate to whom notice of a settlement was required under Bankruptcy Rules 2002 and 9019.  The notice of the Settlement provided was legally sufficient, as it was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  As detailed above, notice was served on more than 66,000 parties and published over the course of two weeks in 86 newspapers throughout the country, including newspapers in and around

Columbus, MS.  As attested by the appearance of numerous individuals from Columbus, MS, there was more than sufficient notice received by those who might claim damages from exposure to creosote.  A requirement of further notice would only damage the creosote claimants, as it would delay consummation of the Settlement and payment to the claimants.

*The Settlement*

12.     The Settlement Agreement settles, compromises, resolves and closes the Adversary Proceeding and settles, compromises, resolves, and extinguishes the Trust Derivative Claims, any claims that were asserted or that could have been asserted in the Second Amended Adversary Complaint, and the claims asserted in the Complaint-in-Intervention and the claims that could have been asserted in the Complaint-in-Intervention relating to the subject matter of the Adversary Proceeding, together and on a global basis to the extent provided in the Settlement Agreement.

13.     Pursuant to the Settlement Agreement, within two Business Days after the Effective Date, Anadarko shall cause to be paid to the Litigation Trust $5,150,000,000.00 plus Interest from the Lodging Date as set forth in Sections 3.1 and 3.3 of the Settlement Agreement by wire transfer of immediately available funds. The Litigation Trust shall cause the Settlement Proceeds to be allocated and distributed to the Litigation Trust Beneficiaries as prescribed by the Litigation Trust Agreement.

14.     The Litigation Trust succeeded, as of and after the Plan Effective Date, to any and all claims against the Anadarko Released Parties related to the claims, issues and subject matter of the Adversary Proceeding which were held, owned and/or controlled by one or more Debtors before the Plan Effective Date.  Since the Plan Effective Date, the Litigation Trust has not sold,

assigned, transferred, encumbered, hypothecated, abandoned, conveyed or otherwise disposed of any claims received by the Litigation Trust from Debtors pursuant to the Plan.

*Bankruptcy Rule § 9019*

15.    Courts consider the following factors when determining whether to approve a settlement pursuant to Bankruptcy Rule 9019, which provides that after notice and a hearing "the court may approve a compromise or settlement":

(i)     the balance between the litigation's possibility of success and the settlement's future benefits;

(ii)    the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment;

(iii)   the paramount interest of the creditors, including each affected class' relative benefits, and the degree to which creditors do not object to or affirmatively support the proposed settlement;

(iv)    whether other parties in interest support the settlement;

(v)     the competence and experience of counsel supporting the settlement, and the experience and knowledge of the bankruptcy court judge reviewing the settlement;

(vi)    the nature and breadth of releases to be obtained by officers and directors; and

(vii)   the extent to which the settlement is the product of arm's length bargaining.

*In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007).  In considering approval of a settlement, a court is not required to conduct a mini-trial to "decide the numerous questions of law and fact raised ... but rather to canvass the issues" raised by the parties, *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir.), *cert. denied*, 464 U.S. 822 (1983), and decide whether a proposed settlement falls "below the lowest point in the range of reasonableness." *In re Teltronics Services, Inc.*, 762 F.2d 185, 189 (2d Cir.1985).  In considering approval of a settlement under Rule 9019, a bankruptcy court must make an

> educated estimate of the complexity, expense and likely duration of litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process, in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968).

16.    The Settlement falls well above the point in the range of reasonable litigation outcomes, and is reasonable, fair and equitable and is in the best interests of the Parties and the Beneficiaries, and therefore meets the standards for approval under applicable law and Bankruptcy Rule 9019.

17.    Each applicable *Iridium* factor supports approval of the Settlement.  The first two *Iridium* factors are related and support approval: the balance between the litigation's possibility of success and the settlement's future benefits, and the likelihood that the litigation will be complex and protracted, such that any potential recovery from the litigation will be expensive and delayed.  *In re Iridium Operating, LLC*, 478 F.3d at 465.  Here, the amount of damages that this Court would award the Litigation Trust remains undecided.  Following the Decision, the parties argued that damages should be as little as $850 million or more than $20 billion.  All parties also face significant risks, expense and delay from several years of appeals.  In contrast, upon approval, the Settlement will provide immediate, significant and certain economic benefits to Tronox's environmental and tort claimants, who collectively are estimated to receive more than $5 billion for environmental remediation and medical and other expenses.  The Government has represented that the Settlement is the largest environmental settlement in history.  There is no evidence in the record that the Settlement amount will not satisfy the claims of the few objecting parties.

18.     The next two *Iridium* factors likewise favor approval: the paramount interests of the creditors (which considers both the objective benefits that creditors may receive and their views on the settlement) and the extent to which other parties in interest support the settlement. *Id.; In re Hilsen*, 404 B.R. 58, 76 (Bankr. E.D.N.Y. 2009).   As set forth above, the Settlement provides objectively significant and tangible benefits to the environmental and tort claimants. The Settlement also has overwhelming support.   Following a substantial notice campaign, only two substantive objections were filed to the Settlement.   Moreover, Tronox's largest creditor (the United States) is a signatory to the Settlement and strongly supports it.   The Litigation Trust's Advisory Board, which is charged with protecting the interests of the environmental and tort claimants with respect to this litigation, also unanimously voted to approve the Settlement.   *See* Settlement [Adv. Dkt. No. 637], Ex. C.

19.     With respect to the fifth and seventh *Iridium* factors, this Court has observed the parties to this litigation firsthand over the last five years and concludes that the Settlement Agreement has been negotiated and consummated by sophisticated parties, each represented by competent and experienced counsel.   *See In re Iridium Operating*, LLC, 478 F.3d at 465.   The final applicable *Iridium* factor—the extent to which the settlement is the product of arm's-length bargaining—is also satisfied.   *See In re Iridium Operating, LLC*, 478 F.3d at 465.

20.     At the hearing, no objectant referred to any of the factors mentioned above by which courts measure settlements.   Mr. Colom complimented the parties present on the size of the settlement.   Counsel for Maranatha insisted that the settlement amount should be greater but had no valid support for his arguments.   For example, he contended that Defendants could pay more, but that is no basis for evaluating a settlement.   Any claim for punitive damages in this case was dismissed years ago. 429 B.R. 73, at 110-112.   Counsel for Maranatha complained that

the settlement amount was at the low end of this Court's range of possible outcomes as set forth in the Decision, ignoring that further litigation on the issue of damages was ongoing and that the Court's decision was subject to many years of appeal.  Finally, many of his complaints involved the assumption that his client's proof of claim would not be satisfied in an allowable amount, but if that is the case (and it is only a supposition) the reason is not the size of the settlement but the allocation approved years ago in connection with confirmation of the Plan of Reorganization and approval of the various Trust Agreements, Conf. Order ¶¶ 85, 92-94; ESA App. Order ¶ 1. Collateral challenges to these agreements are barred by res judicata. *See*, *e.g.*, *Sure-Snap Corp. v. State Street Bank & Trust Co.*, 948 F.2d 869, 873 (2d Cir. 1991) (confirmed plan binds "creditors as to all the plan's provisions, and all related, property or non-property based claims which could have been litigated in the same cause of action").[13]

21.     Colom and Maranatha also object to the scope of the Settlement and the Settlement Injunction because they assert that it bars, among other things, the assertion of Future Claims against the Anadarko Released Parties.  Maranatha Obj. ¶ 6; Colom Obj. at 3.  The Settlement in fact helps parties who may have Future Claims (if there are any such entities).  The Bar Order entered in these bankruptcy cases on May 28, 2009 [Bankr. Dkt. No. 466] required the filing of all Claims, as defined, on or before August 12, 2009.  At the time of entry of the Bar Order in 2009, the Kerr-McGee plant in Columbus, Mississippi had been closed for six years, and the Bar Order did not provide for a category of "future claims" relating to exposure to creosote.  In fact, many creosote-related claims were filed from Columbus, MS, Avoca, PA and elsewhere.  Nevertheless, despite the fact that the Bar Order does not provide for Future Claims,

---

[13] Even if the settlement proceeds allocated to Columbus ultimately prove insufficient to complete remediation, there may be—under some circumstances—an opportunity to supplement those funds with any funds remaining in trust accounts for other sites that have been fully remediated.  ESA ¶¶ 13(d), 40(a), 57(b), 82(a), 107(e).

the Tort Claims Trust Agreement [Adv. Dkt. No. 634] does.[14]   At the hearing, the Associate

General Counsel and Compliance Officer for the Garretson Resolution Group explained the Tort

Trust's procedures for individuals who seek to file a Future Tort Claim and noted that his office

is preparing a short fact sheet to provide information to the residents in Columbus, Mississippi

and Avoca, Pennsylvania, two of the principal areas affected by creosote exposure.   Thus, by

providing funding to the Litigation Trust, the Settlement provides benefits to the so-called Future

Claimants that they would not have in the absence of the Settlement.   In any event, even if the

Settlement did not actually benefit Future Claimants, the Objectors have not cited any authority

that the Anadarko Released Parties, as Defendants in this fraudulent conveyance action, cannot

be released from any claim or any Trust Derivative Claim by the assignee of the trustee, who has

pursued these claims under § 544(b) of the Bankruptcy Code on behalf of all creditors.   *See*

*Moore v. Bay*, 284 U.S. 4 (1931).   As discussed further below, the injunction provided for the

benefit of the Anadarko Released Parties is narrowly tailored and appropriate under the

circumstances.

   *Standard for Approval of Environmental Settlement*

   22.    A settlement agreement relating to environmental liabilities may be approved

where it is fair, reasonable, and consistent with environmental law. *See Publicker Indus. Inc. v.*

*United States (In re Cuyahoga Equip. Corp.),* 980 F.2d 110, 119-20 (2d Cir. 1992); *United States*

*v. Hooker Chem. & Plastics Corp.*, 540 F. Supp. 1067, 1072 (W.D.N.Y. 1982), *aff'd*, 749 F.2d

968 (2d Cir. 1984); *United States v. Charles George Trucking, Inc.*, 34 F.3d 1081, 1085 (1st Cir.

---

[14] Section 1.2(m) of the Tort Claims Trust Agreement defines "Future Tort Claim" as "a Tort Claim that arose prior to the Effective Date but was not the subject of a timely filed Proof of Claim (or a Proof of Claim that was authorized by a Final Order to be late filed before the Effective Date)," and provides a procedure for future Claimants to participate in a litigation recovery.  Further, § 3.4 of the Tort Claims Trust provides for the creation of four funds, one of which (Fund "A") is "established for the payment of Allowed Asbestos Claims, Allowed Future Tort Claims, and any Allowed Unaccounted-for Tort Claims."

1994).  This "limited standard of review reflects a clear policy in favor of settlements." *New York v. Solvent Chem. Co.*, 984 F. Supp. 160, 165 (W.D.N.Y. 1997).  Here, where Federal agencies have determined that settlement is warranted, "the scope of a court's authority to second-guess an agency's discretionary and policy-based decision to settle is at best minimal." *U.S. SEC v. Citigroup Global Mkts., Inc.,* 673 F.3d 158, 164 (2d Cir. 2012);  *In re Cuyahoga Equip. Corp.*, 980 F.2d at 118.  The Court may only approve or disapprove the settlement; it may not rewrite it.  *See Harris v. Pernsley*, 654 F. Supp. 1042, 1049 (E.D. Pa. 1987), *aff'd,* 820 F.2d 592 (3d Cir. 1987).  An evidentiary hearing is not required, and no party has requested one.  *Charles George Trucking, Inc.*, 34 F.3d at 1085.

23.     The Settlement Agreement is fair, reasonable and consistent with environmental law.  The Settlement comports with the CERCLA  objectives "to encourage prompt and effective responses to hazardous waste releases and to impose liability on responsible parties," as well as "to encourage settlements that would reduce the inefficient expenditure of public funds on lengthy litigation."  *Cuyahoga Equip. Corp.*, 980 F.2d at 119. (citations omitted).   The Settlement Agreement satisfies the "fair, reasonable, and consistent with environmental law" standard and should be approved.

*The Injunction*

24.     It is respectfully submitted that the following permanent injunction is appropriate under the circumstances and should be issued by the District Court: "Pursuant to 28 U.S.C. §§ 1367 and 1651, § 105(a) of the Bankruptcy Code and Bankruptcy Rules 7001 and 7065, (i) any Debtor(s), (ii) any creditor of any Debtor who filed or could have filed a claim in the Chapter 11 Cases, (iii) any other Person whose claim (A) in any way arises from or is related to

the Adversary Proceeding, (B) is a Trust Derivative Claim, or (C) is duplicative of a Trust Derivative Claim, and (iv) any Person acting or purporting to act as an attorney for any of the preceding is hereby permanently enjoined from asserting against any Anadarko Released Party (I) any Trust Derivative Claims or (II) any claims that are duplicative of Trust Derivative Claims, whether or not held or controlled by the Litigation Trust, or whether or not the Litigation Trust could have asserted such claims against any Anadarko Released Party."

25.     The injunction closely follows the injunction approved by the Second Circuit in another bankruptcy proceeding, *Marshall v. Picard (In re Bernard L. Madoff Inc. Securities LLC)*, 740 F.2d 81, 89-92 (2d Cir. 2014).  There, the Circuit Court said that the injunction was proper because "by its own terms, [the injunction] is limited to third-party claims based on derivative or duplicative liability or claims that could have been brought by the Trustee" and that any such claims would "undoubtedly have an effect on the bankruptcy estate."[15]   Similar injunctions or releases have been entered in the recent past in other bankruptcy cases.  *See In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 644 (Bankr. S.D.N.Y. 2012);  *see also In re Dreier LLP*, 429 B.R. 112, 133 (Bankr. S.D.N.Y. 2010).

26.     The injunction in this case is also carefully limited.  The injunction herein does not apply to or bar the following:  (i) any criminal liability; (ii) any liability arising under Title 26 of the United States Code (Internal Revenue Code) or state tax laws; (iii) any liability arising under federal or state securities laws; (iv) any action to enforce a covenant not to sue, release, or agreement not to seek reimbursement contained in the Settlement Agreement; (v) any liability

---

[15] The *Madoff* court stated that the legal nature of a claim distinguishes a derivative claim from a particularized claim:  "a derivative injury is based upon 'a secondary effect from harm done to [the debtor],' an injury is said to be 'particularized' when it can be ''directly traced to [the third party's] conduct.''"  *Madoff*, 740 F.2d at 89, *citing St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 704 (2d Cir.1989).

that an Anadarko Released Party might have that does not arise from or through a liability of a Debtor; (vi) any liability of an Anadarko Released Party due to its status or acts or omissions since November 28, 2005 as a/an (A) owner, (B) operator, (C) discharger, (D) lessee, (E) permittee, (F) licensee, (G) person in charge, (H) holder of a right of use and easement, (I) arranger for disposal or treatment, (J) transporter, or (K) person who generates, handles, transports, treats, stores or disposes of solid or hazardous waste; (vii) any liability relating to the E&P Business or the stored power or battery business (including, but not limited to, as owned or operated by U.S. Avestor LLC and Kerr-McGee Stored Power Company LLC[16]); and (viii) any liability that any Anadarko Released Party retained, received or assumed pursuant to the Assignment Agreement or Assignment, Assumption, and Indemnity Agreement. For the avoidance of doubt, to the extent that a liability of an Anadarko Released Party excluded from the injunction herein by the preceding sentence would be a liability for which such Anadarko Released Party would be jointly and severally liable with others, including but not limited to one or more Debtors or Reorganized Debtors, under applicable law, nothing in the injunction is intended to alter any such applicable principles of joint and several liability where otherwise provided by law. The injunction herein does not apply to the Litigation Trust and the United States, which are providing releases and covenants not to sue in the Settlement Agreement.

27.     The requested permanent injunction is necessary and appropriate to carry out the provisions of the Bankruptcy Code, to prevent any entity other than the Litigation Trust from exercising control or possession over property of the estate that has been transferred to the Litigation Trust, and/or to avoid re-litigation or litigation of claims that were or could have been asserted by the Litigation Trustee on behalf of all creditors.  Without the Injunction, Anadarko

---

[16] Provided, however, that as it relates to Kerr-McGee Stored Power Company LLC, subpart (vii) is applicable only to the extent that such liability, if any, relates to or arises from the stored power or battery business.

would not have agreed to pay an historic price to settle the Adversary Proceeding if it faced the threat of re-litigating the very claims it is settling here.  To the extent the Colom and Maranatha Objections are objections to the Injunction, they are overruled for the foregoing reasons and for the reasons set forth in ¶ 21 of the Conclusions of Law.[17]

*Withdrawn Objection*

28.     As noted above, certain AIG parties objected to the Settlement, expressing concern about its effect on their rights.  This objection was settled by the addition to this Report and Recommendation of the following Findings, which the Court hereby makes:

> Certain AIG parties have requested a reservation to "preserv[e]" their rights, if any, under certain insurance policies that were transferred to two environmental response trusts in connection with the Plan.  AIG Obj. ¶¶ 20–22.  The AIG parties have expressed concern that the Injunction, which only enjoins certain claims against the Anadarko Released Parties, may impact any rights they have, if any, with respect to these two response trusts.   While parties often allow for reservations of rights, the Court finds it is unnecessary to deny approval of the Settlement on the basis of AIG's objection.  The Nevada Trust and Multistate Trust are plainly not Anadarko Released Parties as that term is used in the Injunction.  There is no need to add a reservation of rights to preserve any party's treatment in connection with the Chapter 11 Cases because the Settlement expressly states that "[n]othing herein is intended to modify … the Plan, or the Confirmation Order."  Settlement § 13.11.   As such, AIG's Stipulations (as defined in the AIG Objection) are not altered or otherwise affected as between the parties to those Stipulations by the terms of the Settlement.  The Court overrules the AIG Objection.

*Conclusion*

For the reasons set forth above, the undersigned overrules all objections to the 9019 Recommendation Motion and recommends that the District Court grant the relief sought in the

---

[17] To the extent that Federal Rule of Bankruptcy Procedure 7065 applies, the requested injunction satisfies subsection (d) thereof by setting forth the reasons for its issuance, the specific terms thereof, and a description in reasonable detail of the act or acts restrained or required.

9019 Recommendation Motion and the United States Joinder and enter an Approval Order in substantially the form requested by the parties and attached as Exhibit "B" hereto.

Bankruptcy Rule 9033 sets forth the procedure to follow with respect to a Report and Recommendation.  Under Bankruptcy Rule 9033, parties ordinarily have 14 days after service of the Report and Recommendation to "serve and file with the clerk written objections which identify the specific proposed findings or conclusions objected to and state the grounds for such objection."  Under Rule 9033(c), the Court can extend the period for up to an additional 21 days. On May 30, 2014, Defendants' counsel filed a letter on the docket [Bankr. Dkt. No. 3001 ; Adv. Dkt. No. 660], requesting that the Court extend the objection deadline to allow parties additional time given the significance of the Settlement and widespread interest in the case.  The letter requests a total of 38 days, including three for mailing.  The letter represents that the Litigation Trust and the United States have no objection.  The Court grants the request, thereby providing that parties may have a total of 38 days after the date hereof to serve and file with the clerk written objections which identify the specific proposed findings or conclusions objected to and state the grounds for such objection.


Dated:  New York, New York
        May 30, 2014


                                        s/Allan L. Gropper
                                        UNITED STATES BANKRUPTCY JUDGE