*COUNSEL OF RECORD LISTED ON SIGNATURE BLOCK*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TRONOX INCORPORATED,<br>TRONOX WORLDWIDE LLC<br>f/k/a Kerr-McGee Chemical Worldwide LLC,<br>and TRONOX LLC f/k/a Kerr-McGee<br>Chemical LLC,[1]<br><br>    Plaintiffs,<br><br>  v.<br><br>KERR-McGEE CORPORATION, *et al.*,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. _____<br>)<br>) Adversary Proceeding No. 09-01198 (ALG)<br>) Bankruptcy Case No. 09-10156 (ALG)<br>)<br>)<br>)<br>)<br>) |

---

[1]   Pursuant to the Anadarko Litigation Trust Agreement ("Trust Agreement"), which was approved by the Bankruptcy Court on February 14, 2011 [Bankr. Dkt. No. 2812], the Anadarko Litigation Trust was appointed as the representative of each of the Plaintiff Debtors' estates, as that term is used in section 1123(b)(3)(B) of the Bankruptcy Code, with the power and right to prosecute this matter. Pursuant to the Trust Agreement and Order, the Anadarko Litigation Trust was "deemed substituted" for the Debtor Plaintiffs in this matter "as the party in such litigation."

|                                        |   |
|----------------------------------------|---|
| THE UNITED STATES OF AMERICA,          | ) |
|                                        | ) |
|          Plaintiff-Intervenor,         | ) |
|                                        | ) |
|     v.                                 | ) |
|                                        | ) |
| TRONOX, INC.,                          | ) |
| TRONOX WORLDWIDE LLC,                  | ) |
| TRONOX LLC,                            | ) |
| KERR-MCGEE CORPORATION, and            | ) |
| ANADARKO PETROLEUM                     | ) |
| CORPORATION,                           | ) |
|                                        | ) |
|          Defendants.                   | ) |
|                                        | ) |

**RESPONSE OF PLAINTIFF ANADARKO LITIGATION TRUST AND
DEFENDANTS TO THE OBJECTIONS TO THE BANKRUPTCY COURT'S
FINDINGS OF FACT AND CONCLUSIONS OF LAW ON THEIR JOINT MOTION
FOR A REPORT AND RECOMMENDATION RECOMMENDING APPROVAL OF
THE SETTLEMENT AGREEMENT RESOLVING THE ADVERSARY PROCEEDING
<u>AND ISSUANCE OF AN INJUNCTION IN SUPPORT THEREOF</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 5

ARGUMENT .................................................................................................................. 9

I.      This Court Should Overrule the Objections and Approve the Settlement. ........................ 9

        A.      Courts Apply a Deferential Standard in Deciding Whether to Approve a
                Bankruptcy Settlement. ................................................................................. 9

        B.      Each Applicable *Iridium* Factor Supports Approval of the Settlement. ............... 10

II.     The Court Should Enter The Injunction ........................................................................ 13

CONCLUSION .............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. White Cross, Inc. v. Orentzel (In re Am. White Cross, Inc.)*,
   269 B.R. 555 (D. Del. 2001) ................................................................. 13

*Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan*,
   806 F. Supp. 380 (W.D.N.Y. 1992) ........................................................ 8

*CoreStates Bank, N.A. v. Huls Am., Inc.*,
   176 F.3d 187 (3d Cir. 1999) ................................................................. 13

*Field v. The Trust Estate of Rose Kepoikai (In re Maui Ind. Loan & Fin. Co.)*,
   2013 WL 6670541 (Bankr. D. Haw. Dec. 18, 2013) .............................. 15

*In re Iridium Operating LLC*,
   478 F.3d 452 (2d Cir. 2007) ............................................................ 9, 14

*Leonard v. Dorsey & Whitney LLP*,
   553 F.3d 609 (8th Cir. 2009) ................................................................ 10

*Mario v. P & C Food Mkts., Inc.*,
   313 F.3d 758 (2d Cir. 2002) ................................................................... 8

*Marshall v. Picard (In re Bernard L. Madoff Inv. Secs. LLC)*,
   740 F.3d 81 (2d Cir. 2014) ............................................................ 14, 15

*Messer v. Peykar Int'l Co.*,
   510 B.R. 31 (S.D.N.Y. 2014) ............................................................... 10

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ........................................................... 11, 14

*Stoll v. Gottlieb*,
   305 U.S. 165 (1938) .......................................................................... 13

*Sure-Snap Corp. v. State Street Bank & Trust Co.*,
   948 F.2d 869 (2d Cir. 1991) ................................................................ 13

*Thomas v. Arn*,
   474 U.S. 140 (1985) .......................................................................... 10

*TMT Trailer Ferry Protective Comm. for Indep. Stockholders
   of TMT Trailer Ferry, Inc. v. Anderson*,
   390 U.S. 414 (1968) ............................................................................ 9

iv

**Statutes**

28 U.S.C. § 636(b)(1)(C) ........................................................................................... 10

**Other Authorities**

1987 Adv. Comm. Notes on Bankruptcy Rule 9033 .................................................. 8

**Rules**

Fed. R. Bankr. P. 9033 ........................................................................................... 6, 8

## INTRODUCTION

1.      This Settlement resolves two complaints asserting fraudulent transfer and other claims against Defendants that were jointly litigated in the above-captioned Adversary Proceeding.[2]  The first was initially filed by the Debtors and later, pursuant to Tronox's plan of reorganization, prosecuted by the Litigation Trust for the benefit of Tronox's environmental and tort creditors.   The second was filed by Tronox's largest creditor in its chapter 11 cases, the United States of America.[3]

2.      Trial of the Adversary Proceeding lasted 34 days.   Twenty-eight witnesses testified, including 14 that were qualified as experts.  The Bankruptcy Court admitted more than 6,100 exhibits and thousands of pages of deposition testimony from 40 witnesses into evidence. 5/30/14 Findings of Fact & Conclusions of Law on Joint Motion for a Report & Recommendation [Adv. Dkt. No. 661] ("Report and Recommendation" or "R&R") at 3.   On December 12, 2013, the Bankruptcy Court issued a 166-page opinion that found Defendants liable for actual and constructive fraudulent transfers, and indicated tentative, non-final possible damages of $5,150,490,000 to $14,166,148,000.[4]  *Id.*; Mem. of Op., After Trial [Adv. Dkt. No. 622] (the "Decision") at 149.

---

[2]     Capitalized terms not defined herein shall have the meanings ascribed to them in the Settlement Agreement, which is attached as Ex. A to the Report and Recommendation (the "Settlement").

[3]     Pursuant to the Trust Agreement, the United States agreed that the proceeds of any settlement or other resolution of its claims would be treated as if they were funds obtained by the Litigation Trust and would be distributed to the Beneficiaries in accordance with the Litigation Trust Agreement.  Trust Agmt. ¶ 13(c).

[4]     In briefing following the Decision regarding the amount of Defendants' bankruptcy claims (which would offset any damages award), the parties argued that the final damages award should be higher or lower than the Court's range.  Defendants argued that any damages should be no more than $850 million while Plaintiff argued it was entitled to more than $20 billion.  R&R at 3–4.

3.      On April 3, 2014, Plaintiff Anadarko Litigation Trust (as successor to Debtors Tronox Incorporated, Tronox Worldwide LLC, and Tronox LLC), Plaintiff-Intervenor the United States of America,[5] and Defendants Kerr-McGee Corporation and certain of its subsidiaries[6] reached the Settlement.   Upon approval of the Settlement, the Litigation Trust will receive $5,150,000,000 plus interest in cash, the net proceeds of which will be distributed to the beneficiaries of the Litigation Trust in accordance with the allocations approved by the Bankruptcy Court during Tronox's chapter 11 cases.[7]   On May 30, 2014, the Bankruptcy Court issued the Report and Recommendation recommending that this Court approve the Settlement and enjoin certain parties from asserting claims that are duplicative or derivative of claims that were or could have been asserted by the Debtors or the Litigation Trust.[8]   *See* R&R at 17, ¶ 22.

4.      The Settlement provides more than $4.4 billion for environmental remediation— the largest such payment in U.S. history—and more than $600 million for tort claimants.   Not surprisingly, Tronox's environmental and tort creditors overwhelmingly support the deal. Following a massive notice campaign that included mailing more than 66,000 copies of the

---

[5]   The United States is acting on behalf of the United States Environmental Protection Agency ("EPA"); the United States Department of Agriculture, acting through the United States Forest Service; the United States Department of Commerce, acting through the National Oceanic and Atmospheric Administration; the United States Department of the Interior, acting through the Fish and Wildlife Service and Bureau of Land Management; the United States Department of Defense ("DOD"), including the United States Department of the Army, the United States Army Corps of Engineers, United States Department of the Navy, and the United States Department of the Air Force; and the United States Nuclear Regulatory Commission.   R&R at 2, n.4.

[6]   Defendants are Kerr-McGee Corporation, Anadarko US Offshore Corporation (f/k/a Kerr-McGee Oil and Gas Corporation), Kerr-McGee Worldwide Corporation, KM Investment Corporation (incorrectly sued as Kerr-McGee Investment Corporation), Kerr-McGee Credit LLC, Kerr-McGee Shared Services Corporation, and Kerr-McGee Stored Power LLC (collectively, with Anadarko Petroleum Corporation, "Anadarko").   *Id.* at 2 n.2.   Although it was dismissed from the Adversary Proceeding in May 2012 and is not a defendant, Anadarko Petroleum Corporation is a party to the Settlement.   *Id.* at 3 n.5.

[7]   The Settlement Agreement requires full payment of the $5.15 billion plus interest within two business days after the District Court's order approving the Bankruptcy Court's Report and Recommendation is no longer subject to appeal, rehearing reconsideration or petition for certiorari.   *See* Settlement Agmt. §§ 2.3.5, 2.4.1, 3.1.

[8]   The Report and Recommendation also recommended that the Court approve the Settlement under environmental laws.   The United States is filing a reply brief in support of those findings and conclusions.

Report and Recommendation to potentially interested parties, publishing settlement notices over the course of 300 days in 84 newspapers across the country, and maintaining a website where hundreds of interested parties obtained information about the Settlement, *only two tort creditors objected*.  Significantly, the Tronox Tort Claims Trust, created to protect the interests of tort claimants like the two objectors, did not object and instead submitted a brief in the Bankruptcy Court fully supporting the fairness of the Settlement.  *See* Bankr. Dkt. No. 2997.

5.     The objections were filed by two tort claimants and relate to a single environmental site in Columbus, Mississippi, where Kerr-McGee Chemical LLC owned and operated a creosote wood treating plant from 1964 to 2003.  The only substantive objections are to the amount of the Settlement.  Simply put, the objectors claim that Defendants should be paying more than $5.15 billion, and that individuals with personal injury and property damage claims related to the Columbus, Mississippi site should be receiving more of the Settlement proceeds.

6.     There is no credible basis to challenge the total amount of the Settlement.  The amount of the Settlement—$5.15 billion—is more than twice the amount that Plaintiff's experts estimated for all future environmental and tort liabilities based on information that was known or knowable as of 2005 ($2.07 billion) and nearly three times the Bankruptcy Court's estimate for such liabilities following trial ($1.757 billion).[9]  *See* Decision at 114.  Of course, the Settlement does not need to provide an historic recovery to be approved; it simply must fall above the lowest point in the range of reasonable outcomes.  The Settlement easily clears that or any other standard.

---

[9]     The estimates for future environmental and tort liabilities were based on information that was known or knowable as of 2005 because 2005 was the valuation date for the fraudulent transfer claims in the Adversary Proceeding.  *See* Decision at 114.

7.     Moreover, the percentage of the Settlement proceeds to be paid to tort claimants—a figure agreed to and mandated by final orders of the Bankruptcy Court that were entered during Tronox's chapter 11 cases—is fair and equitable.  One of the objectors, Anita Gregory, contends that the Columbus, Mississippi tort claimants should receive an additional $1.5 billion.  *See* Obj. of Anita Gregory [Adv. Dkt. No. 671] at 2.  To the extent that she seeks to reallocate the settlement proceeds to obtain these funds, Ms. Gregory is barred from doing so under the doctrine of res judicata.  The tort claimants' percentage recovery was extensively negotiated among Tronox's creditors—including representatives of tort claimants—and was approved by the Bankruptcy Court in its November 30, 2010 Confirmation Order and other plan-related agreements.  The Confirmation Order became final and non-appealable long ago and neither of the objectors nor anyone else appealed the Confirmation Order.  Additionally, there is nothing unfair about the tort claimants' recovery.  The approximately $600 million they will recover is about $250 million more than Plaintiff's tort expert's estimate for Tronox's present and future tort liabilities based on information that was known or knowable as of 2005 ($356.7 million) and more than twice the amount that the Bankruptcy Court found for such liabilities after trial ($257 million).  Decision at 112, 114.  Given this, it is not surprising that both the Tronox Tort Claims Trust and the vast majority of the individuals that filed claims with the Tort Trust, which will distribute the tort portion of the Settlement proceeds, did not object to the Settlement.

8.     The fact that only two objections were filed and both lack merit is further evidence of the historic nature of this Settlement and the thorough review of the Settlement that the Bankruptcy Court already performed.  The Settlement is fair and equitable, is in the best interests of Tronox's creditors and estates, and is well above the lowest point in the range of

reasonableness.  As set forth below, it should be approved under any standard and easily satisfies the highly-deferential standard applicable here.   Accordingly, Plaintiff and Defendants respectfully request that the Court overrule the objections to the Report and Recommendation and enter the order attached hereto as Exhibit A approving the Settlement and issuing the requested injunction.

## BACKGROUND

9.      On April 9, 2014, Plaintiff Anadarko Litigation Trust and Defendants filed a motion with the Bankruptcy Court seeking a report and recommendation that the District Court enter an order (a) approving the Settlement Agreement, dated April 3, 2014 (as corrected on April 9, 2014 [Adv. Dkt. No. 637]), and (b) permanently enjoining certain persons from asserting certain claims (the "Injunction").  *See* Adv. Dkt. No. 638.

10.      On May 28, 2014, the Bankruptcy Court held a hearing on the settlement approval motion, the objections to the motion and the United States' joinder to the motion.   The Bankruptcy Court admitted declarations in support of the Settlement into evidence without objection, took judicial notice of certain filings on its docket, and heard oral argument from the parties.  R&R at 17–19, ¶ 22.

11.      On May 30, 2014, the Bankruptcy Court issued its Report and Recommendation and recommended "that the District Court (1) adopt all of the proposed findings of fact and conclusions of law set above and hereafter; (2) approve the Settlement Agreement; and (3) issue the requested permanent injunction."  R&R at 19, ¶ 22.  It attached a proposed Order Approving Report and Recommendation of the Bankruptcy Court Recommending Approval of Settlement Agreement Resolving Adversary Proceeding and Issuance of an Injunction Enjoining Certain

Persons from Asserting Certain Claims (the "Proposed Order and Injunction").[10]   *See* Adv. Dkt. No. 661-2.

12.     On May 30, 2014, the Bankruptcy Court also extended the time for parties in interest to object to the Report and Recommendation.  Parties ordinarily have 14 days to "serve and file with the clerk written objections which identify the specific proposed findings or conclusions objected to and state the grounds for such objection."  But that period may be extended for up to 21 days.  *See* Fed. R. Bankr. P. 9033.  The Bankruptcy Court provided parties in interest the maximum amount of time under the Bankruptcy Rules in which to object to the Report and Recommendation and then added three additional days for service by mail.  R&R at 32.

13.     On June 6, 2014, Kurtzman Carson Consultants, LLC ("KCC"), the claims and noticing agent in the Debtors' chapter 11 cases, completed service of more than 66,000 copies of the Report and Recommendation to potentially interested parties.  *See* Aff. of Service [Bankr. Dkt. No. 3004].  KCC sent the Report and Recommendation to all persons and entities on Tronox's Creditor Matrix and Core Rule 2002 service list; all state attorneys general in the continental United States; the registered holders of Tronox's pre-bankruptcy Class A and B common stock; nominees for distribution to the beneficial holders of Tronox's pre-bankruptcy Class A and B common stock and 9 1/2% unsecured notes; and other potentially interested parties.  *Id.* ¶¶ 1, 3, 5–7.

---

[10]   Because of questions regarding whether the Bankruptcy Court had the constitutional authority to enter a final judgment in this action when the parties entered into the Settlement Agreement, the Settlement Agreement requires approval from this Court.  The Settlement will not become final until, among other things, this Court issues an Order approving the Settlement that is substantively identical to the Proposed Order and Injunction. *See* Settlement Agmt. § 2.3.3.

14.     In addition, the settling parties undertook an extensive publication notice campaign.  Notices were published over the course of 300 days in 84 newspapers and periodicals across the country.  *See* Decl. of Publ. of Notice of U.S. Bankruptcy Court's Report and Recommendation ("Publ. Decl.") [Bankr. Dkt. No. 3016] ¶¶ 3, 7.  This included all 40 newspapers in which Tronox had published its bar date and confirmation notices plus additional papers that the settling parties thought might reach additional potentially interested parties.  *Compare* Aff. of Publication of Notice of Bar Date [Bankr. Dkt. No. 1465] at 1-3; Aff. of Publication re Confirmation H'rg [Bankr. Dkt. No. 2324] at 1 *with* Publ. Decl. ¶ 9.

15.     Since April 11, 2014, the settling parties also have maintained a website that provides additional information regarding the Settlement: www.kccllc.net/TronoxKerrMcGee Settlement.  *See* Decl. Regarding Establishment of Dedicated Website and Service [Bankr. Dkt. No. 3017] ¶ 4.  The website includes potentially relevant information regarding the Settlement, including copies of the Settlement Agreement, the Report and Recommendation, the settlement approval motion, the text of the requested Injunction, the documents that define the environmental sites covered by the Settlement Agreement, Tronox's claims register, and key pleadings and agreements filed in Tronox's chapter 11 cases and the Adversary Proceeding.  Visitors to the website also can register for electronic noticing.  *Id.*  As of July 18, 2014, the website had received a total of 915 hits and 517 unique visits.  *Id.* ¶ 5.

16.     After extending the objection period to the maximum allowable amount and undertaking a massive notice campaign, only two creditors filed objections to the Report and Recommendation.

17.     On July 3, 2014, the Maranatha Faith Center, Inc. in Columbus, Mississippi, filed an objection.  *See* Obj. to Proposed Findings of Facts and Conclusions of Law and Entry of

Judgment (the "Maranatha Obj.") [Adv. Dkt. No. 670]. Maranatha asserts that Plaintiff and the United States should have settled for more than $5.15 billion because Defendants have sufficient projected cash flow to "pay off in excess of $12 billion" and its stock price increased significantly after the Settlement was announced. *Id.* ¶¶ 1-2. Maranatha also contends that the Settlement is too low because it is based on projected costs as of 2005 and does not take into account cost increases in 2014. *Id.* ¶ 3. It further argues that the "proposed verdict" violates the "clear heads doctrine." *Id.* ¶ 4. Finally, Maranatha seeks to incorporate by reference all of the arguments from its objection before the Bankruptcy Court.[11] *Id.* ¶ 5.

18. On July 7, 2014, Anita Gregory also filed an objection to the Report and Recommendation on behalf of herself and as spokesperson for the "Columbus, Mississippi Creosote Claimants." *See* Letter of Anita Gregory (the "Gregory Obj.") [Adv. Dkt. No. 671]. Ms. Gregory challenges the adequacy of the amount of the Settlement and requests that the Columbus tort claimants receive an additional $1.5 billion.[12] *Id.* at 2.

---

[11] A party cannot simply incorporate prior objections but instead must identify the specific proposed findings or conclusions to which they object and state the grounds for such objection. Accordingly, the Court need not consider the arguments that Maranatha seeks to incorporate by reference from prior briefing. *See* Fed. R. Bankr. P. 9033(d) (District Court review limited to "any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made"); *see also* 1987 Adv. Comm. Notes on Bankruptcy Rule 9033 (adopting the de novo review provisions of Federal Rule 72(b)); *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (under Rule 72(b), a "bare statement, devoid of any reference to specific findings or recommendations . . . [is] not sufficient to preserve" an objection); *Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (under Rule 72(b), "[i]t is improper for an objecting party to attempt to relitigate the . . . content of the hearing before the Magistrate Judge by submitting papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge."). To the extent the Court decides to address the objections that Maranatha seeks to incorporate by reference, Plaintiff's and Defendants' responses can be found in their reply brief in support of the settlement approval motion. *See* Adv. Dkt. No. 654.

[12] Plaintiff and Defendants disagree with the numerous unfounded factual assertions that Ms. Gregory makes in her objection. These assertions appear to be offered in support of Ms. Gregory's view that the Settlement amount is insufficient. The Court should overrule that objection for the reasons set forth below and does not need to address the disputed factual issues that Ms. Gregory raises. There is likewise no basis for Ms. Gregory's request to stay the settlement approval process for 45 days to allow her to seek relief from Congress. If relevant to the Court's determination, she has had more than sufficient time to petition Congress since the Settlement was publicly filed on April 3, 2014, and still can do so as the approval process continues.

## ARGUMENT

**I.     This Court Should Overrule the Objections and Approve the Settlement.**

**A.     Courts Apply a Deferential Standard in Deciding Whether to Approve a Bankruptcy Settlement.**

19.     The Second Circuit has developed the following factors that a court should

consider in determining whether to approve a settlement under Bankruptcy Rule 9019:

- the balance between the litigation's possibility of success and the settlement's future benefits;

- the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on a judgment;

- the paramount interests of the creditors, including each affected class' relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;

- whether other parties in interest support the settlement;

- the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement;

- the nature and breadth of the releases to be obtained by officers and directors; and

- the extent to which the settlement is the product of arm's-length bargaining.

*In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007) (citing, *inter alia*, *TMT Trailer Ferry Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).  As the Bankruptcy Court concluded, a defendant's projected cash flow is not a relevant factor.  R&R at 25–26, ¶ 20.  Neither objector has provided any law to the contrary.

20.     A court "need not conduct an independent investigation into the reasonableness of the settlement but must only 'canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness.' … In doing so, the court is permitted to rely upon 'opinions of the trustee, the parties and their attorneys.'" *In re Adelphia Comm's Corp.*, 327

B.R. 143, 159 (Bankr. S.D.N.Y. 2005), *adhered to on reconsideration*, 327 B.R. 175 (Bankr. S.D.N.Y. 2005), *aff'd*, 337 B.R. 475 (S.D.N.Y.), *aff'd*, 224 F. App'x 14 (2d Cir. 2006).

### B.   Each Applicable *Iridium* Factor Supports Approval of the Settlement.

21.      The Bankruptcy Court found that each applicable *Iridium* factor supports approval of the Settlement.[13]   R&R at 24–26, ¶¶ 17–21.   The objectors do not challenge any of the Bankruptcy Court's specific findings or conclusions with respect to the applicable *Iridium* factors.[14]  Instead, they simply contend that the amount of the Settlement is too low and that the Columbus tort claimants should receive more money.[15]   *See* Maranatha Obj. ¶¶ 1–2; Gregory Obj. at 2, 4.

22.      It is well-established that a settlement does not need to represent the best possible result or pay claimants in full to be approved under Bankruptcy Rule 9019.   Instead, it simply must fall above the lowest point in the range of reasonable litigation outcomes.   *See Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) ("[T]here is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion – and

---

[13]   The sixth *Iridium* factor—the nature and breadth of releases to be obtained by the Debtors' officers and directors—is not applicable because the Settlement Agreement does not contain any such releases.

[14]   Objections must identify the specific proposed findings or conclusions objected to and state the grounds for such objection. Fed. R. Bankr. P. 9033. Because no one objected to the Bankruptcy Court's specific findings and conclusions regarding the *Iridium* factors, this Court does not need to review them. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985) (Rule 72(b)'s statutory counterpart, 28 U.S.C. § 636(b)(1)(C), "does not on its face require any review at all, by either the district court or the court of appeals, of any issue that is not the subject of an objection"); *Leonard v. Dorsey & Whitney LLP*, 553 F.3d 609, 620 (8th Cir. 2009) (applying *Arn* to Rule 9033 and holding that "the failure to file objections eliminates not only the need for de novo review, but *any* review by the district court") (emphasis in original); *Messer v. Peykar Int'l Co.*, 510 B.R. 31, 38 (S.D.N.Y. 2014) (Rule 9033 and 28 U.S.C. § 157(c) mandate de novo review only of those portions of findings that have received objections).

[15]   Maranatha also objects based on the "clear heads doctrine" (presumably the clean hands doctrine).   *See* Maranatha Obj. ¶ 4.  Not surprisingly, Maranatha offers no legal support for its position that a party allegedly or actually found liable of misconduct (including unclean hands) is barred from settling a dispute.  Indeed, such a doctrine would prevent settlements in numerous disputes.

the judge will not be reversed if the appellate court concludes that the settlement lies within that range."), *cert. denied*, 409 U.S. 1039 (1972); *In re Adelphia Comm's Corp.*, 327 B.R. at 159 ("The settlement need not be the best that the debtor could have obtained …. Rather, the settlement must fall 'within the reasonable range of litigation possibilities.'").

23.     The Bankruptcy Court found that the Settlement falls well within the range of reasonable litigation outcomes.  It noted that the ultimate amount of damages was undecided; in fact, the parties had argued following the Court's December 2013 decision that damages should be as little as $850 million or more than $20 billion.  The Bankruptcy Court also found that all parties face significant risks, expense and delay from several years of appeals absent settlement. This would further delay recoveries that Tronox's environmental and tort claimants need for environmental remediation and medical and other expenses.  In contrast, the Bankruptcy Court concluded that, upon approval, the Settlement will provide immediate, significant and certain economic benefits to Tronox's environmental and tort claimants.  R&R at 24, ¶ 17.

24.     Rather than addressing these specific findings, the objectors simply assert that the Litigation Trust and United States should have held out for more because Defendants could have paid more and the liabilities ultimately may cost more than the Settlement amount.  The objectors ignore the factors applied by the Bankruptcy Court as mandated by the Second Circuit in *Iridium* that may have resulted in Tronox's environmental and tort creditors receiving far less than the Settlement provides.  Importantly, this is not a case where the settlement beneficiaries are taking pennies on the dollar to obtain the proceeds today.  The total settlement value of $5.15 billion is substantially in excess of what Plaintiff's experts (and later the Bankruptcy Court) concluded were the likely future costs of the environmental and tort liabilities based on

information that was known or knowable as of 2005.[16]  *See supra* ¶¶ 6–7.  Indeed, the U.S. EPA describes the Settlement as "the largest recovery for the cleanup of environmental contamination in history" and "the largest bankruptcy-related award that EPA has ever received for environmental claims and liabilities."[17]

25.     There likewise is no basis for the Columbus tort claimants to receive an additional $1.5 billion as Ms. Gregory requests.  Gregory Obj. at 2.  In its November 30, 2010 Confirmation Order, which became final and non-appealable long ago, the Bankruptcy Court approved the allocations of the net proceeds from this litigation to the environmental and tort claimants as part of Tronox's Plan of Reorganization and found those allocations were fair, equitable and in the best interests of Tronox, its estates and all holders of claims and equity interests.  *See* Findings of Fact and Conclusions of Law Confirming First Am. Joint Plan of Reorganization of Tronox Inc., et al. [Bankr. Dkt. No. 2567] ¶¶ 36, 37.  Because of these determinations during Tronox's chapter 11 cases, the Bankruptcy Court correctly found that creditors like Ms. Gregory are now barred from challenging these allocations under the doctrine of res judicata.  R&R at 26, ¶ 20; *Sure-Snap Corp. v. State Street Bank & Trust Co.*, 948 F.2d

---

[16]     Maranatha's concerns that the Settlement relies on artificially low "2005 values" are misplaced and flat wrong.  Maranatha Obj. ¶ 3.  The Settlement amount is not based on an estimate of liabilities as of 2005 or any other date but instead reflects a negotiated compromise based on numerous factors discussed above, including the Bankruptcy Court's preliminary damages assessment and the risks and delays inherent in continuing with the litigation.  At trial, the parties presented estimates of future environmental and tort claims based on information that was known or knowable as of 2005 as part of the solvency case.  Plaintiff's estimate of $2.04 billion was based on more than 40,000 hours of work by its environmental and tort experts and was set forth in more than 2,000 pages of expert reports.  *See, e.g.*, Direct Testimony of Dr. Neil M. Ram PhD [Adv. Dkt. No. 417] ¶¶ 2–3; Direct Examination of Denise Neumann Martin [Adv. Dkt. No. 421] ¶¶ 1, 31–32.   Since 2005, some of the environmental work included in those estimates has been performed and therefore will not reduce the funds available under the Settlement.   Other costs may have gone up as Maranatha suggests.  The Settlement, however, provides an additional $3 billion over Plaintiff's 2005 liability estimates that can be used to address these and other contingencies.

[17]     http://www2.epa.gov/enforcement/case-summary-tronox-incorporated-bankruptcy-settlement; http://www2.epa.gov/enforcement/case-summary-settlement-agreement-anadarko-fraud-case-results-billions-environmental

869, 873 (2d Cir. 1991) (confirmed plan binds "creditors as to all the plan's provisions, and all related, property or non-property based claims which could have been litigated in the same cause of action"); *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 204 (3d Cir. 1999) (holding that a creditor could not collaterally attack the distribution provision in a plan by a separate post-confirmation action); *Am. White Cross, Inc. v. Orentzel (In re Am. White Cross, Inc.)*, 269 B.R. 555, 559 (D. Del. 2001) (precluding post-confirmation attempt to challenge treatment under plan because confirmation order was final judgment on merits of claim); *see also Stoll v. Gottlieb*, 305 U.S. 165, 170–71 (1938) (res judicata of confirmed plan applies to even jurisdictional determinations). The Bankruptcy Court further concluded that this result was not unfair, as Tronox's tort claimants will receive more than double the amount that the Bankruptcy Court estimated for future tort liabilities based on information that was known or knowable as of 2005, and both the Tronox Tort Claims Trust and the vast majority of the tort creditors did not object. R&R at 24, ¶ 16; 25, ¶ 18.

26.     In short, settlements are compromises and the law does not require a settlement to represent the highest possible recovery in order to merit approval. *See In re Iridium Operating LLC*, 478 F.3d at 464–65; *Newman*, 464 F.2d at 693; *In re Adelphia Comm's Corp.*, 327 B.R. at 159. Instead, after taking into account risks such as the uncertain amount of damages and the delays and uncertainty caused by protracted appeals, a settlement must simply fall above the lowest level of reasonable litigation outcomes to be approved. *See supra* ¶ 22. There can be no serious dispute that this Settlement meets this highly deferential standard. The Court should approve the Settlement.

## II.     The Court Should Enter The Injunction.

27.     No one objected to the Bankruptcy Court's findings that the Injunction "is narrowly tailored and appropriate under the circumstances," limited in accordance with recent

Second Circuit precedent, and "is necessary and appropriate to carry out the provisions of the Bankruptcy Code."  R&R at 26–27, ¶ 21; 29–30, ¶¶ 25–26; and 30–31, ¶ 27.

28.     Moreover, these findings are well-supported.  The Injunction is nearly identical to a permanent injunction that the Second Circuit recently upheld in connection with a multi-billion dollar settlement of fraudulent transfer claims.  *See Marshall v. Picard* (*In re Bernard L. Madoff Inv. Secs. LLC*), 740 F.3d 81, 89 (2d Cir. 2014).  Like that case, the Injunction requested here "by its own terms, is limited to third party claims based on derivative or duplicative liability or claims that could have been brought by the Trustee against the" released parties.  *In re Bernard L. Madoff Inv. Secs. LLC*, 740 F.3d at 89; *see also id.* ("We have defined so-called 'derivative claims' in the context of bankruptcy as ones that 'arise[] from harm done to the estate' and that 'seek [] relief against third parties that pushed the debtor into bankruptcy.'") (internal citations omitted).

29.     In addition to being permitted under binding Second Circuit authority, the Settlement could not have been achieved without the Injunction.  The Injunction protects Defendants from having to re-litigate claims asserted on behalf of all creditors that have been resolved by the Litigation Trust pursuant to the Settlement Agreement and Anadarko's payment of the Settlement amount.  *See In re Bernard L. Madoff Inv. Secs. LLC*, 740 F.3d at 91–92 ("We are nonetheless wary of placing too much significance on the labels appellants attach to their complaints, lest they circumvent the Net Equity Decision by 'pleading around' the automatic stay and permanent injunction.").  If the Injunction were denied and derivative claims (or claims duplicative thereof) permitted, claimants would be able to avoid the compromises approved in the Settlement Agreement and Tronox's Plan of Reorganization (and related agreements).  Given these concerns, Anadarko would not have agreed to settle the Adversary Proceeding for such a

substantial price, and litigation would continue.  Courts have recognized the importance of barring derivative claims so as not to jeopardize a settlement.  *See, e.g.*, *Field v. The Trust Estate of Rose Kepoikai (In re Maui Ind. Loan & Fin. Co.)*, 2013 WL 6670541, at *9 (Bankr. D. Haw. Dec. 18, 2013) ("[T]he cross-claims are entirely derivative or duplicative of Trustee's fraudulent transfer claims against Settling Defendants and should be dismissed, with prejudice, to preclude any possibility of jeopardizing Trustee's recovery of estate assets by interfering with the Settlement."), *report & recommendation adopted*, Case No. CV 14-00011 SOM-BMK (D. Haw. Jan. 15, 2014).

## <u>CONCLUSION</u>

For the reasons set forth herein, the Court should adopt the Report and Recommendation, overrule the objections, approve the Settlement, and issue the Proposed Order and Injunction.

15

Dated:  July 21, 2014

Respectfully submitted,

*/s/ David J. Zott, P.C.*

David J. Zott, P.C. (*admitted pro hac vice*)
Andrew A. Kassof, P.C. (AK 7079)
Jeffrey J. Zeiger (*admitted pro hac vice*)
James R.P. Hileman (*admitted pro hac vice*)
Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois  60654-3406
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel for the Anadarko Litigation Trust*

John C. Hueston, Litigation Trustee
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone:  (310) 277-1010
Facsimile:  (310) 203-7199

*Anadarko Litigation Trustee*

*/s/ Thomas R. Lotterman*
Thomas R. Lotterman *(admitted pro hac vice)*
Bingham McCutchen LLP
2020 K Street NW
Washington, DC 20006-1806
Telephone: (617) 951-8000
Facsimile: (617) 951-8736

Kenneth N. Klee (KK 5910)
David M. Stern *(admitted pro hac vice)*
Klee, Tuchin, Bogdanoff & Stern LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067
Telephone: (310) 407-4000
Facsimile: (310) 407-9090

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st day of July, 2014, a true and correct copy of the

foregoing was served on:


**Via Electronic Mail**

Robert William Yalen
Assistant United States Attorney
86 Chambers Street
New York, New York 10007

*Counsel for the United States of America*

**Via Email and U.S. Mail First Class Postage Prepaid**

Hal H. H. McClanahan, III
P.O. Box 1091, Columbus, MS 39703
threehlaw@bellsouth.net

*Counsel to Maranatha Faith Center, Inc.*

**Via Email and Overnight Mail**

Anita Gregory
918 Osceola Street
Jacksonville, Florida 32204
Anitagrego212@gmail.com


                                        */s/ Jeffrey J. Zeiger*_____
                                        Jeffrey J. Zeiger