UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE TRONOX INC., *et al.*,
                      Plaintiffs,

-v-

ANADARKO PETROLEUM CORP., *et al.*,
                      Defendants.

14-CV-5495 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      Anadarko Petroleum Corporation and affiliated companies previously moved to enforce an injunction against Plaintiff Larry Ashworth prohibiting litigation against Anadarko for prior environmental harms. After that motion was denied and while an appeal was pending, the parties reached a settlement. Anadarko now moves for vacatur of this Court's opinion and order denying its motion to enforce the injunction. For the reasons that follow, the motion is denied.

**I.    Background**

      The Court assumes familiarity with the factual background of the original environmental tort case, as described in Judge Katherine B. Forrest's 2014 opinion and order. *In re Tronox Inc.*, No. 14-CV-5495, 2014 WL 5825308 (S.D.N.Y. Nov. 10, 2014), *order enforced*, 549 B.R. 21 (S.D.N.Y. 2016). As part of the settlement of that case and related bankruptcy litigation, the court issued an injunction against new cases asserting tort claims stemming from the same tort or those that were duplicative of the original case. *See In re Tronox Inc.*, No. 14-CV-5495, 2021 WL 653148 (S.D.N.Y. Feb. 19, 2021) (ECF No. 131 ("2021 Opinion").) Plaintiff Ashworth brought an environmental tort claim in the Western District of Louisiana, arguing that it was not within the scope of the injunction because it could not have been asserted at the time of the filing of the bankruptcy petition. (2021 Opinion at 4-5.) Anadarko contended that because the cause

1

of the tort arose before the bankruptcy petition was filed, Ashworth was enjoined from bringing the claim. (*Id.*) This Court held that because Ashworth, based on the allegations, did not have a pre-bankruptcy-petition relationship with the tortfeasor, and only learned of the contamination much later, his claims arose after the bankruptcy, were not duplicable, and did not violate the injunction. (*Id.* at 4-15.) Thus, this Court denied Defendant Anadarko's motion to enforce an anti-filing injunction, holding that, to be brought as a pre-petition bankruptcy claim, environmental tort claims must show a pre-petition relationship. (2021 Opinion at 11-12.)

Anadarko appealed to the Second Circuit. Following oral argument before the Second Circuit, the parties reached a settlement in principle to resolve both the appeal and Ashworth's underlying claims. The class settlement involving those underlying claims was ultimately approved by the district court in the Western District of Louisiana in January 2025. On March 10, 2025, Anadarko moved, with the consent of Plaintiffs, to vacate the 2021 Opinion under Federal Rule of Civil Procedure 60(b)(6) (ECF No. 137) and filed a memorandum of law in support (ECF No. 138 ("Mem.")).

## II.     Legal Standard

Rule 60(b)(6) allows courts to "relieve a party or its legal representative from a final judgment, order, or proceeding" for "any . . . reason that justifies relief" except those listed in Rule 60(b)(1)-(5). A motion seeking such relief is "addressed to the sound discretion of the district court," *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986), but may be granted in only "exceptional circumstances," *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 29 (1994). Although the prospect or fact of settlement previously weighed in favor of vacating prior rulings, the Supreme Court's decision in *U.S. Bancorp v. Bonner Mall* "raised the bar appreciably," making vacatur more difficult to attain. *Microsoft Corp. v. Bristol Tech., Inc.*, 250 F.3d 152, 154 (2d Cir. 2001).

The possibility or fact of settlement is not itself an "exceptional circumstance" justifying the "extraordinary remedy" of Rule 60(b)(6) vacatur. *Major League Baseball Props., Inc. v. Pac. Trading Cards, Inc.*, 150 F.3d 149, 151 (2d Cir. 1998). Instead, the equitable remedy is meant to provide relief in exceptional circumstances such as "extreme and undue hardship." *Lee v. Marvel Enters., Inc.*, 765 F. Supp. 2d 440, 452 (S.D.N.Y. 2011) (quotation marks omitted), *aff'd*, 471 F. App'x 14 (2d Cir. 2012) (summary order). In *Major League Baseball*, for example, the Second Circuit held that vacating a judgment to facilitate a settlement would be appropriate if "the financial effect" of litigation "would be ruinous" for a party. 150 F.3d at 151.

The standard is strict in part because "[j]udicial precedents are presumptively correct and valuable to the legal community as a whole." *U.S. Bancorp* 513 U.S. at 26. Imposing a high burden upon parties seeking vacatur, courts weigh the importance of the finality of judgments and the creation of law with the conservation of judicial resources and the deterrence of frivolous litigation. *Austin v. Ford*, 181 F.R.D. 283, 286 (S.D.N.Y. 1998). And although resolution of disputes through settlement serves the public interest, "far more district courts within this Circuit have issued decisions denying vacatur than approving it, both in circumstances where the settlement was conditioned on vacatur and where vacatur was sought subsequent to the settlement." *Young v. Cooper Cameron Corp.*, No. 04-CV-5968, 2008 WL 1748462, at *3 (S.D.N.Y. Apr. 15, 2008) (collecting cases).

### III.  Discussion

Anadarko argues that vacatur will serve the parties' interests and the public interest by conserving resources and mitigating a purported conflict between the 2021 Opinion and Second Circuit precedent, and that the opinion's nonprecedential status reduces the corresponding interest in its finality. (*See* Mem. at 4-8.) None of those arguments, separate or together, satisfies Rule 60(b)(6)'s stringent requirements.

A.     **The Parties' Interests**

Anadarko first argues that vacatur is in the parties' interests because their "global settlement envisioned vacatur of this Court's decision" and would preserve "time and resources, not just of the parties, but of multiple federal courts." (Mem. at 7, 8.) In particular, Anadarko insists that this resolution is "not a routine settlement" because it will settle the claims of "approximately 400" class members. (*Id.* at 8, 10.) Anadarko musters no case law to support its position that these considerations alone warrant vacatur, nor does it identify any potential injury to any party if the opinion were not vacated (*cf. id.* at 7-8), let alone an injury which creates either an "extraordinary circumstance" or an "extreme and undue hardship," particularly in light of the fact that the settlement has already been finalized. *Cf. Lee*, 765 F. Supp. at 452. Indeed, Anadarko does not suggest that the global settlement is contingent on vacatur, which it presumably is not given that it has been finally approved.

Moreover, "the expenditure of judicial resources is not just a prospective concern." *Clarke v. Castro*, No. 10-CV-6330, 2013 WL 686680, at *4 (S.D.N.Y. Feb. 26, 2013); *see also Aetna Cas. & Sur. Co. v. Home Ins. Co.*, 882 F. Supp. 1355, 1358 (S.D.N.Y. 1995) (holding that the public interest in maintaining a judgment includes "the considerable judicial resources that have already been expended in litigati[on]"). Here, after years of litigation in multiple federal courts, vacatur would mean that judicial "resources [were] expended for nought." *Cf. Aetna*, 882 F. Supp. at 1358. And considering future resources, mere "[t]rials and appeals are not exceptional circumstances." *See Beaumont*, 2024 WL 3520421, at *4 (quotation marks omitted). Further, "while the availability of vacatur may facilitate settlement after the judgment under review has been rendered and certiorari granted (or appeal filed), it may *deter* settlement at an earlier stage." *U.S. Bancorp*, 513 U.S. at 27-28. Anadarko's proposal, couched in the language of conserving resources, might incentivize "[s]ome litigants . . . to roll the dice rather than settle

4

in the district court" if parties can remove adverse holdings through vacatur. *Id.* at 27 (emphasis omitted); *see also Beaumont*, 2024 WL 3520421, at *4 ("If litigants can neutralize unfavorable rulings through settlement, they may be encouraged to expend judicial resources (and the resources of their opponents) with abandon."). Either way, rejecting vacatur does not mean that the parties are not otherwise "free to settle if they wish to avoid the costs of further litigation." *See Beaumont*, 2024 WL 3520421, at *4.

### B. Public Interest

Anadarko also argues that the 2021 Opinion holds less public value because it is "unpublished and nonprecedential," having "analyzed idiosyncratic allegations." (Mem. at 8.) This argument is baseless—both because the opinion is *not* "unpublished" and because the opinion is exactly as "nonprecedential" as every other district court opinion. Unlike appellate court decisions, district court decisions are not precedential in the strict sense of the word: they are not binding on other courts or judges—even judges in the same district—in subsequent cases. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011). There is thus no legal distinction between a district court opinion that is published in the *Federal Supplement* reporter, giving it an "F. Supp. 3d" citation, and an opinion published only on a computerized database such as Westlaw or Lexis. Both can be and are routinely cited for their persuasive value, and both can be rejected when other judges and courts find that they lack persuasive force. There is no distinction among district court decisions akin to the Second Circuit's distinction between its "summary orders"— which carry the warning that they "do not have precedential effect"—and its published opinions. And whether a district court opinion is published with an "F. Supp. 3d" cite has no inherent

bearing on its persuasiveness.[1]  *See Lebron v. Sanders*, 557 F.3d 76, 79 n.7 (2d Cir. 2009) ("We do not suggest that published district court opinions are more persuasive than unpublished district court opinions; nor do we discourage district courts from citing to an unpublished opinion that is, for any reason, more appropriate than a published one.")  District court opinions can, however, provide persuasive guidance for those in similar or distinguishable situations, making them "not merely the property of private litigants."  *See U.S. Bancorp*, 513 U.S. at 26.  In that way, the 2021 Opinion clarifies the law regarding environmental-tort claims and their temporal relationship to bankruptcy petitions.  (2021 Opinion at 11.)

The cases on which Anadarko purports to rely do not support a different conclusion.  (*See id.*)  One predates the Second Circuit's decisions requiring "exceptional circumstances" for vacatur, *see Nat'l Union Fire Ins. Co. of Pa. v. Cohen*, No. 92-CV-9500, 1997 WL 639260 at *3 (S.D.N.Y. Oct. 16, 1997), and the other, though later, fails to address Circuit precedent requiring exceptional circumstances, *see Tommy Hilfiger Licensing, Inc. v. Costco Cos., Inc.*, No. 99-CV-3894, 2002 WL 31654958 (S.D.N.Y. Nov. 25, 2002); *see also Young*, 2008 WL 1748462, at *3 & n.1 (S.D.N.Y. Apr. 15, 2008) (noting that *Tommy Hilfiger* is an outlier case).

Finally, though Anadarko argues that the 2021 Opinion was "limited" and "fact-specific" such that it was "not relevant to nonparties" (Mem. at 9), all district court opinions analyze specific allegations or facts, including all of the foregoing cases demonstrating a requirement of further extraordinary circumstances to vacate, *see ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*, 547 F.3d 109, 114 (2d Cir. 2008).  Indeed, all that contention does is "describe precisely what it is

---

[1] Indeed, the process by which district court opinions receive "F. Supp. 3d" citations is somewhat mysterious, apparently involving some determination as to which opinions are important or significant, either by staff at Thomson Reuters Corporation, the owner of West Publishing, or at the prompting of judges who request such a citation.

that federal district courts ordinarily do." *Id.* The application of law to alleged fact is hardly exceptional or extraordinary. *See Young*, 2008 WL 1748462, at *4.

    **C.**    **Supposed Conflict with *Duplan***

Anadarko argues finally that the public interest would be served by vacating the 2021 Opinion because it would remediate "[t]he tension" between the opinion's holding and the Second Circuit's decision in *In re Duplan Corp.*, 212 F.3d 144 (2d Cir. 2000). (Mem. at 10-11.) While Anadarko is correct that this Court "did not address" *Duplan* in its 2021 Opinion (Mem. at 5), that is hardly surprising given that neither Anadarko nor Plaintiffs ever cited that decision— which was already two decades old—in their briefing before this Court. Even putting that aside, the Court finds Anadarko's arguments regarding *Duplan* unpersuasive.

First, as a procedural matter, Rule 60(b)—which governs vacatur of an order or judgment, *see U.S. Bancorp*, 513 U.S. at 29—does not justify that relief here based on *Duplan*. "Under Rule 60(b)(1), a party may seek relief based on "mistake," including "a judge's errors of law"; the length of time to file a Rule 60(b)(1) motion "may not exceed one year." *Kemp v. United States*, 596 U.S. 528, 533 (2022) (quotation marks omitted). If the 2021 Opinion erred because of *Duplan*, it would be a "mistake" within Rule 60(b)(1), and therefore any motion is outside the one-year period for that rule. *See id.* at 534. Even if vacatur were to be considered under Rule 60(b)(6) ("any other reason that justifies relief"), and assuming this request is being made "within a reasonable time," vacatur would require "extraordinary circumstances," *id*. at 533—which the Court finds lacking. "Congress has prescribed a primary route, by appeal as of right and certiorari, through which parties may seek relief from the legal consequences of judicial judgments." *U.S. Bancorp*, 513 U.S. at 27. Parties may not use Rule 60(b) proceedings "simply to relitigate matters settled by the original judgment." *Donovan v. Sovereign Sec., Ltd.*, 726 F.2d 55, 60 (2d Cir. 1984). The law "precludes reopening a judgment under Rule 60(b)

where the movant has voluntarily abandoned his appeal" without some intervening change in the law. *Id.* Rule 60(b)(6) does not afford a second bite at the apple when a party voluntarily relinquishes the arguments it could have made against the decision on appeal. And regardless of the considerations of fairness to the parties, allowing "vacatur as a refined form of collateral attack on the judgment" additionally risks "disturb[ing] the orderly operation of the federal judicial system." *U.S. Bancorp*, 513 U.S. at 27.

Finally, on the merits, the Court disagrees that *Duplan* justifies vacatur of the 2021 Opinion. To be sure, as this Court acknowledged in its 2021 Opinion, the case law was "less than pellucid" on the issue raised by Anadarko's motion for an injunction. (2021 Opinion at 8.) But that would be no less true if Anadarko had called the Court's attention to *Duplan*. It is far from clear that the Second Circuit in *Duplan* rejected a pre-petition "relationship" test in the context of environmental tort claims.[2] And even if it had, there is a substantial argument that a relationship test should apply to such claims following later decisions such as *Elliott v. General Motors LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 143 (2d Cir. 2016).

These are the very issues that the parties vigorously disputed in their briefs and arguments on appeal to the Second Circuit. The Second Circuit panel held a lengthy and lively oral argument in November 2022. Six and a half months after that oral argument, Anadarko

---

[2] The court in *Duplan* briefly referenced the standard from *In re Texaco*, 182 B.R. 937 (Bankr. S.D.N.Y. 1995), in pointing out certain disputed issues on which the lower courts had failed to make factual findings. *Duplan*, 212 F.3d at 157. Under the *Texaco* standard, a claim arises when all the physical events required to establish the elements of the claim have occurred, including that any contamination is "capable of detection." *Id.* But the Second Circuit did not apply the *Texaco* test, nor did the facts of *Duplan* raise the issues that this Court considered when it issued its 2021 Opinion. *See id.* Indeed, in *Duplan* the pre-petition relationship may have been assumed because the plaintiff's land was "adjacent" to the source of contamination. *See id.* at 149. This stands in contrast to the situation before this Court, where the plaintiff's land was over five miles from the origin of the contamination, and thus the pre-petition relationship was a live issue. (2021 Opinion at 11-12.)

asked the court to hold the appeal in abeyance due to the parties' imminent global settlement. That settlement, finally approved in January 2025, presumably reflected the parties' assessment of various risks and benefits of proceeding with the appeal. Like settlements generally, it was to be encouraged—and it was encouraged by the Second Circuit's holding its decision in abeyance. It does not, however, constitute an exceptional circumstance warranting vacatur of this Court's 2021 Opinion.

### IV.  Conclusion

For the foregoing reasons, Anadarko's motion to vacate this Court's February 19, 2021 opinion and order is DENIED.

The Clerk of Court is directed to close the motion at ECF No. 137.

SO ORDERED.

Dated: August 6, 2025
       New York, New York

_____
J. PAUL OETKEN
United States District Judge